R. B. KEPLEY *et al.* v. CARTER & SUGGS.

1. PLEADING — *Waiver.* A defendant waives the filing of a reply by proceeding to trial without objection.

2. GUARANTOR — *Measure of Liability.* The liability of a guarantor upon an obligation cannot be extended by implication, and he should not be held bey.ond the precise terms of his contract.

*Error from Shawnee District Court.*

ALL the material facts are stated in the opinion.

*Eugene Hagan,* and *J. G. Waters,* for plaintiff in error:

1. Under the pleadings, no judgment could be taken against Kaczynski, and it was error to permit it to be done. The admitted and confessed allegations in Kaczynski's answer, as matter of law, prevented Carter & Suggs from obtaining any judgment whatever, as against Kepley. The admissions in a suit, whether as to one defendant or more, are admissions for the entire action, and especially in a joint action against two defendants.

2. The court instructed the jury "that the plaintiffs deny all the allegations contained in the answer of both the defendants inconsistent with the allegations contained in plaintiffs' petition." This instruction was duly excepted to by defendants. This instruction was material error, because it was untrue as a fact, and because it changed the issues. And in this connection we call the attention of the court to the verdict of the jury, where they found against the defendant. Which one? And this is not bettered, for further on the case shows that judgment was entered accordingly.

3. We objected to any evidence under the petition. Plaintiffs framed their cause of action, and are bound by it. They sued Kepley and Kaczynski for general damages for a breach of this contract, some $6,175 for sand they did not take, for $32.50 for sand delivered and not paid for, and for $500 liquidated damages. We submit that this objection ought to have been sustained, for the one reason, that while Kepley

might have been bound for all the damages sued for, Kaczynski, under the contract, was not.

4. The court permitted Carter & Suggs to introduce testimony showing that, as the river was up and they could not get river sand, Kepley permitted them to haul bank sand. It appears that Kaczynski had nothing to do with this. We asked the court to instruct the jury that this arrangement would not bind Kaczynski unless he consented to it, which the court refused to give, and defendants excepted. We think this was material error.

5. The contract between these parties had reference to certain paving that Kepley was to do on Kansas avenue and Jackson street, in the city of Topeka. Kepley answered that the sand was to be used upon certain paving contracts in the city of Topeka. What contracts these were, with whom made, or the amount of sand required under these contracts, or specified in these contracts, is nowhere alleged in the pleadings. It strikes us that, if the contracts were with the city of Topeka, alluded to in their contract, it ought to have been proved. It was not proved. It further strikes us that these contracts, when proved, would have been the best evidence as to what sand was required to be furnished by Kepley. But they put Nealley, the city engineer, on the stand, and asked him these questions: "State what were the dimensions of the contract." The defendants objected to the question as incompetent; overruled, and excepted to. "State the square yards of surface." Same objection and exception. "State what was the quantity of sand used by Mr. Kepley about that pavement per square yard." Same objection and exception. To these questions the witness answered, giving the amount according to the specifications. Three other questions and answers followed, giving further information as to what the contract with the city provided. If there was a contract with the city, it was in writing. We submit that it was error for the court to admit the testimony, the contract never having been read in evidence.

6. The court erred in refusing to give the instruction asked

by defendants, to the effect that plaintiffs could not require defendant Kepley to take more than 2,000 loads under the contract; the defendants excepted.

7. The court refused to give the instruction asked by defendants, that the measure of recovery was no more than the difference in the contract price; the defendants excepted. We claim this was the true rule, and that the court erred in refusing to give it. In this connection the court, in its fourth instruction, directed the jury that if plaintiffs were entitled to recover, it is such damages "as will compensate them for the net profits they would have made after paying for the delivery of the sand;" excepted to by defendants.

The court in its second instruction said: "If you find from the evidence that the plaintiff did furnish sand to the defendants inferior to 'good, sharp river sand,' and that the defendants used this sand in their public work, then the defendants are not in a condition to refuse to pay for such sand, and the rule is they are liable to plaintiff for such sand as the defendants accepted and used." The testimony shows that Kaczynski had nothing whatever to do with the receipt or acceptance of any sand. He was guarantor, and had the right to rely on the terms of the contract; and if there was an arrangement with Kepley and plaintiffs for him to take other sand, it could not bind him. His protection as a guarantor was in the terms of the contract. He could be protected if Kepley took "good, sharp river sand," by compelling the city to pay Kepley, so Kepley could pay his material men; but if Kepley could take any kind of sand, while Kepley could be made to pay, he could not compel the city to pay him; and the guarantor had the right to so understand it.

*Bradford & Huron*, for defendants in error:

Plaintiffs in error complain that the paving contracts of Kepley, with whom made, or the amount of sand required under, or specified by them, are nowhere alleged in the pleadings. We reply that this suit was not brought upon Kepley's paving contracts, but upon his contract with Carter &

Suggs to buy from them all of the sand he should use in the construction of pavements on Kansas avenue and Jackson street. Plaintiffs in error admit in their pleadings, in their evidence, and in their brief filed here, that Kepley made such a contract. The contract sued upon is made a part of the petition of Carter & Suggs. It is also made a part of the answer of Kepley; and Kaczynski in his answer admits its execution; hence there is no dispute as to its contents. This narrows the controversy down to three questions of fact: First, how much sand did Kepley contract to buy from Carter & Suggs? Second, did Kepley pay for all the sand delivered by Carter & Suggs? Third, did Carter & Suggs, by failing and refusing to deliver sand of quality specified in contract, forfeit their contract? Upon the first question we submit that the agreement in question speaks for itself in language that cannot be misunderstood—there is not a vague syllable in it. There can be no question or quibble as to the meaning of this language. It is a plain and simple agreement on the part of Kepley to buy all of the sand necessary in the construction of the pavements in question from defendants in error. Plaintiffs in error, however, construe this agreement to be a one-sided affair, constructed in the exclusive interest of Kepley, and vesting power in him alone to terminate the contract, before "all of the sand" he should "use in the construction of pavements upon Kansas avenue and Jackson street" was delivered.

But plaintiffs in error contend that Kepley only contracted to take 2,000 loads of sand and as much more as he might choose to take, and counsel assert that whether or not Kepley should accept any sand in excess of 2,000 loads "depended on his own act and volition." The contract is not subject to such an interpretation, even if it contained nothing further as to the quantity of sand contracted for than the garbled extract quoted in their brief, "and as much more as he shall require in the construction of said pavements." By every rule of construction and interpretation, this extract can only be held to mean that defendants in error contracted to

deliver, and that Kepley contracted to buy of defendants in error, at a stipulated price, all sand necessary to the construction of the pavements mentioned. Taking the contract as a whole, there is not a shadow of reason in the interpretation of plaintiffs in error.

As to the claim of plaintiffs in error, that Kepley's paving contracts should have been introduced in evidence, we call attention to the fact that it was in evidence and undisputed that the sand contemplated in his contract with Carter & Suggs was for the construction of pavements under one contract between Kepley and the city of Topeka and another between Kepley and the Rapid Transit Railway Company; but when these contracts were proven, identified and offered in evidence by Carter & Suggs in the trial in the court below, they were excluded, upon objection made by Kepley's counsel. And yet these same counsel now say in their brief: "It further strikes us that these contracts, when proved, would have been the best evidence as to what sand was required to be furnished by Kepley."

The theory of the defense upon the trial was, that Carter & Suggs had forfeited their contract, by reason of their having failed to furnish sand of the quality specified in their contract, and not that there had been any overestimate of quantity. This brings us to consider the third question of fact. Did Carter & Suggs, by failing and refusing to deliver sand of quality specified in the contract, forfeit their contract? Upon this point we submit, that it is not disputed that the delivery of sand was begun on Jackson street at the north side of Tenth street, immediately after the contract was entered into, on April 4, 1887; that the delivery was continued north on Jackson street to a point about the middle of the block between Fifth and Sixth streets without cessation, when Kepley stopped the hauling, assigning as his reason that the sand hauling was so far ahead of the paving that the sand was being damaged and wasted by being driven over by teams. This is the uncontradicted evidence of Carter & Suggs and of at least a half-dozen other witnesses.

Plaintiff in error Kaczynski testified of the bad quality of sand delivered on Jackson street; but the only point he could locate was "on the corner of Fourth and Jackson streets," which point is a full block north of all sand delivered by Carter & Suggs. Again, the evidence of several witnesses is undisputed, that at the time Kepley stopped defendants in error from hauling they were hauling only river sand. Also the evidence of five witnesses is undisputed, that at the time he stopped them from hauling Kepley made no claim that Carter & Suggs had forfeited their contract by reason of having delivered sand of an inferior quality to that required. On the contrary, he based his action upon the sole pretense that they had completed their contract. But these questions of fact were all submitted to the jury. The evidence as to the alleged good quality, on the part of Carter & Suggs, and of bad quality, on the part of Kepley, of the sand in question, was before them. They had seen the witnesses upon the stand, and had heard their testimony. They were the exclusive judges of the evidence, what it proves and disproves, and of the credibility of the witnesses, and by their verdict the jury say that the evidence on the part of Carter & Suggs is true.

Respecting the complaint that no separate reply was filed to Kaczynski's answer, we say that none was required. The answer of Kaczynski is in effect nothing more than a general denial of the petition of plaintiffs. Every allegation in the answer had been met before it was made by counter-allegations in the petition. The petition denies each allegation in the answer, and the fact of priority in filing does not destroy the denial of each allegation which it contains. If the allegations in the petition are true, no single allegation in Kaczynski's answer can be true.

The objection of plaintiffs in error to the introduction of evidence under the petition was properly overruled by the court. The assignments of damages in plaintiff's petition in the court below, complained of in brief of plaintiffs in error, are proper pleading. This suit is for damages for breach of bond.

Every element of damages claimed to have resulted from such breach should be pleaded. Both the maker and the surety are alike liable for damages for each and every breach, if properly set out and proven, subject under the instructions of the court in this case to the limitation in amount of $500, as liquidated damages named in the bond.

Opinion by GREEN, C.: This was an action brought by Carter & Suggs against R. B. Kepley and V. Kaczynski upon a written contract, by the terms of which the former agreed to deliver 2,000 loads of sharp river sand to Kepley for the agreed price of 65 cents a load. The sum of $500 was agreed upon as liquidated damages to be paid by the party failing to comply with the terms and conditions of the contract. Kaczynski signed the following guaranty for Kepley:

"In consideration of the premises above set forth, I do hereby guarantee that the said party of the first part will pay to said second parties the sums of money specified as they shall become due.                    V. KACZYNSKI."

The plaintiffs below asked for damages against both defendants in the sum of $6,175 for a breach of the contract; $32.50 for sand delivered and not paid for, and $500 as liquidated damages. Kepley and Kaczynski each filed separate answers. The former alleged that the plaintiffs had delivered inferior sand, by which he had been damaged in the sum of $500; that he had paid for all the sand delivered to him. The latter alleged in his answer that the defendant Kepley had paid for all sand delivered, and that by reason of such payment he was not liable for any other sum or amount upon the contract. The plaintiffs only replied to the answer of Kepley. The case was tried by the court and a jury, and resulted in a verdict and judgment for the plaintiffs for $267.50. The plaintiffs in error bring the case here upon a number of assignments of error.

It is first urged that no judgment could be taken against Kaczynski, because the plaintiffs failed to reply to his answer, and that the court erred in saying to the jury, "that the plain-

tiffs deny all of the allegations contained in the answer of both defendants inconsistent with the allegations contained in plaintiffs' petition." The answer to this assignment of error is, that the defendant Kaczynski waived the filing of a reply by proceeding to trial without objection, and he cannot now complain. (*Cooper v. Machine Co.*, 37 Kas. 231.) The court refused to give the following instruction: "If Kepley has paid for all the sharp river sand delivered, the defendant Kaczynski is not liable in this action." This, or some similar instruction, should have been given. Kaczynski obligated himself to pay to Carter & Suggs the sums of money specified, as they should come due. Under a fair construction of this language, what is understood to be covered by the sums specified in the contract? Could it mean anything more than the price of the sand? It is true that the sum of $500 is agreed upon as fixed and liquidated damages, to be paid by the failing party, but we do not think this is covered by the guaranty. Kepley agreed to pay 65 cents a load for the sand, less 10 per cent. upon the completion of each block, and the remaining 10 per cent. upon the delivery of the entire quantity specified in the contract. This payment, in our opinion, is what the guaranty given by Kaczynski covered. His obligation was not that Kepley would perform all of the conditions of the contract, but that he would pay the sums specified as they should become due. It would not be presumed that there would be a failure upon the part of either of the contracting parties. So we think the guaranty, by the fair intendment of the language used, did not include the payment of liquidated damages. Text-writers and courts have clearly enunciated the doctrine that the liability of a guarantor is not to be extended beyond the precise terms of his obligation. It will not be implied that he agreed to do more than was expressed in his contract. "It is now too well settled to admit of doubt that a guarantor, like a surety, is bound only by the strict letter or precise terms of the contract of his principal, whose performance of it he has guaranteed; that he is in this respect a favorite of the law, and

that a claim against him is *strictissimi juris.*" (*Kingsbury v. Westfall,* 61 N. Y. 356; *Mining Co. v. Kunnel,* 87 Ind. 560; 1 Brandt, Suretyship and Guaranty, § 93.)

It has been held by this court that the liability of sureties cannot be extended by implication, and they have the right to stand on the exact letter of their contract. (*Henrie v. Buck,* 39 Kas. 381; *Edwards v. Ellis,* 27 id. 344; *Hays v. Closon,* 20 id. 120.) As the judgment of the district court must be reversed as to the plaintiff in error Kaczynski, we do not consider it necessary to consider the other assignments of error, as his rights are more directly affected, and there is no material error apparent in the record as to the other plaintiff in error. It is recommended that the judgment of the district court be reversed as to the plaintiff in error Kaczynski, and that a new trial be granted him; and that the judgment be affirmed as to the plaintiff in error Kepley.

By the Court: It is so ordered.

All the Justices concurring.