THE FIRST NATIONAL BANK OF MCPHERSON, KANSAS,
v. D. A. BRADLEY, as *Receiver*.

**No. 11,533.** (60 Pac. 322.)

1. PROMISSORY NOTE—*Release of Guarantor.* A bank, by resolu-
tion of its directors, guaranteed the payment of certain notes, and
their renewals, at the time they were turned over by it to another
bank. The latter gave up one of the guaranteed notes to the
maker, and other notes were substituted therefor. *Held,* that
the guarantor was discharged from liability to the amount of the
note surrendered.

2. ——— *Judgment against Guarantor Modified.* The bank
to which the guaranteed notes were transferred surrendered
another note, taking in lieu of the same several notes of smaller
amounts which were afterward paid and canceled. The first note
so guaranteed afterward came back into the possession of the
plaintiff bank, and a judgment for the amount of the same was
rendered in this action against the defendant as guarantor.
*Held,* that the judgment should be modified by deducting there-
from the aggregate amount of the several notes received in lieu of
the one so surrendered.

Error from McPherson district court; MATTHEW P.
SIMPSON, judge. Opinion filed March 10, 1900. Modi-
fied.

STATEMENT.

ON January 2, 1896, the stockholders of the First
National Bank of McPherson voted to go into volun-
tary liquidation at the close of business on the day
following. The First State Bank of McPherson was
organized about that time, under the laws of this
state. The president and cashier of the latter were
the same persons who held like positions in the First
National Bank. Some of the stockholders in the na-
tional bank were stockholders in the state bank, but
the majority were not. The directors, with few ex-
ceptions, were different. The stockholders of the na-
tional, at the meeting referred to, by motion, '' ordered

that this bank sell to the First State Bank a sufficient amount of discounts so that, with its cash and sight exchange, it may pay all of its depositors in full on demand." Pursuant to this resolution, the First National sold and delivered to the First State Bank, on January 29, 1896, the day it ceased to do business, notes to the amount of $50,463.40, the same being indorsed in blank as follows : " The First National Bk., per Royal Matthews, Pt." On the day before the delivery of these notes the board of directors of the First National Bank passed a resolution, as follows :

" On motion it was carried that all notes so sold to First State Bank by the First National Bank be, and the collection and payment of same or any renewals thereof, is hereby guaranteed ; and we further pledge all our assets to the security and payment of same, and that said notes so sold be paid before any dividends be declared by the First National Bank."

On August 28, 1897, the First State Bank failed and its assets were taken into the possession of the bank commissioner. On December 4, 1897, D. A. Bradley was appointed, and afterward duly qualified as, receiver of said First State Bank. On February 13, 1898, said Bradley, as receiver, commenced this suit against the First National Bank in the district court, claiming that the latter had guaranteed the payment of a large amount of notes, which were referred to in an exhibit attached to his petition, and that of the notes so guaranteed there was a balance due to said First State Bank amounting to $23,844.43. For a second cause of action, he averred that since the 28th day of January, 1896, the First State Bank had paid out for and upon an account of the First National Bank the sum of $3348.68, and attached an itemized statement of the amount so paid to his petition.

The answer of the First National Bank, among

other allegations, contained the following · (1) A general denial; (2) that after voting to go into liquidation the First National had no authority to do any business except to wind up its affairs, and that no action was taken thereafter toward guaranteeing the notes mentioned in the first count of the petition until February 11, 1896, and that said guaranty at that time did not bind the bank; (3) that there was no power given or granted to create the liability of the First National upon the open account declared upon in the second cause of the petition, and that such expenditures were not necessary or incident to the winding up of the affairs of a national bank, and that if any such payments were made they were voluntary upon the part of the First State Bank and did not bind the First National; (4) that the ten $1000 bonds of the Western Water & Electric Company were taken up and canceled, and that some of the other notes claimed by the plaintiff to be covered by the alleged guaranty were substituted for said bonds without any contract, agreement thereto, or knowledge of the First National Bank that there was no liability upon said bonds or the notes substituted therefor; (5) that the $10,000 in bonds of the Western Water & Electric Company were merged in a deed and bill of sale of all the property of said company taken by the First National Bank in the name of S. G. Hawks; that the said bank knew said bonds were paid and were of no force and void at the time they were taken; (6) negligence on the part of the state bank in not enforcing collection of the guaranteed notes, whereby loss was sustained, exonerating the defendant from liability; (7) demanding judgment for $625, money of the First National collected by the bank commissioner when in charge of the First State Bank and turned over to the receiver, which he refused to deliver to the defendant.

A trial was had before the court, a jury being waived. Findings were made to the effect that there was a guaranty by the First National Bank of the $50,463.40 of notes at the time and in the manner alleged in the petition, and that, of that amount, there was unpaid $26,109.31, for which the First National was liable on its guaranty to the plaintiff below. The court found for the defendant upon the second cause of action, viz., that the First State Bank and its receiver had received upon account of the First National $14,686.11 and had accounted for but $7,933.58, and that there was due the First National Bank the difference, amounting to $6,752.53. This latter amount was deducted from the $26,109.31 found due the plaintiff in the first cause of action, and judgment rendered for plaintiff against the First National Bank for the difference, to wit, $19,346.75.

*John D. Milliken*, and *Geo. W. Allison*, for plaintiff in error.

*Grattan & Grattan*, and *D. P. Lindsey*, for defendant in error.

The opinion of the court was delivered by

SMITH, J.: While we have considered all of the numerous assignments of error, reference will be made to but few of them. As to those not mentioned, we hold against the contention of plaintiff in error.

Among the notes guaranteed by the First National Bank and turned over to the First State Bank was one of A. Girard for the sum of $3600, for which judgment in the amount of $4495 was rendered against the defendant below upon the guaranty. After the receipt of this note, and about May 13, 1896, the First State Bank canceled it, and it was surrendered to the maker and destroyed. In the place of this

Girard paper there were substituted three notes ag_gregating an equal amount, one executed by Royal Matthews for $1000, one by A. E. Dwelle for $1100, and one by L. M. Wyatt for $1500 ; and thereafter these latter notes were surrendered, and in their place the bank took $10,000 in bonds of the Western Water & Electric Company. It is clear that the several transactions subsequent to the taking of the Girard note and the substitution of other securities therefor did not operate as a renewal of the same to bring the transaction within the terms of the guaranty made by the First National Bank, so that it could be charged with the amount for which judgment was rendered. The notes subsequently taken were not renewals of the original obligation, for Girard, by the action of the bank, had stepped out and was no longer liable. In the case of *Kepley v. Carter*, 49 Kan. 72, 79, 30 Pac. 183, the rule as to the liability of guarantors is thus stated :

"Text-writers and courts have clearly enunciated the doctrine that the liability of a guarantor is not to be extended beyond the precise terms of his obligation. It will not be implied that he agreed to do more than was expressed in his contract. 'It is now too well settled to admit of doubt that a guarantor, like a surety, is bound only by the strict letter or precise terms of the contract of his principal, whose performance of it he has guaranteed ; that he is in this respect a favorite of the law, and that a claim against him is *strictissimi juris.*' "

The note of $5000 executed by R. Ella Matthews was included within the terms of the guaranty, and judgment was rendered thereon against the defendant below for $6153.26. It seems that this note was returned to the First National in March, 1896, and was by the First State Bank credited to bills receivable. In

Bank v. Bank.

July, 1897, it appears to have come back into the possession of the First State Bank, and the amount was sued for in this action. At the time it was transferred back to the First National Bank by the First State Bank, other notes were taken in lieu of it, among them the following: Milliken, $334.05. This was paid or settled, and the guarantor should be relieved from the judgment to an amount equal to the same.

The judgment of the court below will be modified, with directions to reduce the amount thereof by striking therefrom the amount stated. The costs in this court will be divided between the parties.