No. 55,137

CHARLES E. CORNETT, *et al.*, *Appellants*, v. CLIFFORD R. ROTH, *et al.*, *Appellees.*

(666 P.2d 1182)

Opinion filed July 15, 1983.

*Michael E. Whitsitt,* of Overland Park, argued the cause and was on the briefs for appellants.

*Richard T. Merker,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause and was on the brief for appellee Clifford R. Roth.

*Mark S. Gunnison,* of McDowell, Rice & Smith, Chartered, of Kansas City, argued the cause and was on the brief for appellee Mid-Continent Research, Inc.

The opinion of the court was delivered by

HOLMES, J.: Charles E. Cornett and Virginia B. Cornett, husband and wife, the plaintiffs in the trial court, appeal from various judgments and orders entered in favor of the defendants, Clifford R. Roth and Mid-Continent Research, Inc. The defendant Mid-Continent Research, Inc., was formerly known as Mid-Continent Research Animals, Inc., and will be referred to herein as MCRA. The Cornetts also appeal from the assessment of an attorney fee for allegedly filing a frivolous motion and from a judgment in favor of Roth in a different case which was consolidated with the principal case in the trial court.

The facts, which are complicated and confusing, need to be set forth in some detail. In July, 1977, the Cornetts approached Mr. Roth, an attorney in Johnson County, about the possibility of selling a business operation and two pieces of real estate. It was alleged that Roth was the business adviser, or the attorney for the Cornetts, or represented them in some other unspecified fiduciary relationship. Roth denied any representation of the Cornetts or the existence of any fiduciary relationship. The Cornetts were the owners of a business known as Mid-Continent Research Animals, Inc. which raised and supplied rats for research purposes. The business was located upon fourteen acres of real estate which the Cornetts desired to sell, along with the business itself. The second tract of land was a quarter section of farm property located in Johnson County. Roth determined that he would purchase both tracts of land and the corporate stock of MCRA.

On August 19, 1977, the parties entered into a written agree-

ment for the sale of the MCRA stock and real estate. The total purchase price was $252,000.00 to be paid as follows:

"$150,000.00 to be delivered to the Sellers in the form of an installment note to the Sellers, payable in monthly installments of $1,000.00 per month at an interest rate of eight percent (8%) per annum, payable over a period of ten (10) years at said rate with the balance of $150,000.00 due at the end of said 10 year period. Said note shall be executed to the Sellers by Mid-Continent Research Animals, Inc.

"Additionally, Buyer also agrees to deliver to the Sellers Twenty-Seven Thousand Dollars ($27,000.00) in the form of a non-interest bearing note due and payable within ten (10) years from the date hereof, in a form agreeable to the Buyer.

"Additionally, the Buyer has executed to the Sellers a note for the sum of Seventy-Five Thousand Dollars ($75,000.00) to be paid ten (10) years from August 30, 1978, with no accumulation of interest."

The agreement was executed by the Cornetts as sellers and by Roth as purchaser. MCRA was not a party to the agreement but did execute a promissory note to the Cornetts dated October 2, 1977, for $150,000.00 due September 30, 1987, with the interest at 8%, also payable on the due date. MCRA made monthly interest payments of $1,000.00 to the Cornetts through the month of May, 1980, even though they were not a party to the agreement and the note did not require payment until the due date. Answers to interrogatories indicate MCRA made the monthly interest payments pursuant to some side agreement with the Cornetts, the terms of which do not appear in the record. Mr. Cornett was retained by Roth as a consultant in the management of MCRA and was serving as its president at the time the assets were sold. The business of MCRA steadily declined and in May or June of 1980, all of its assets were sold and the proceeds utilized to pay other outstanding debts of the rat-raising venture. The Cornetts received none of the proceeds of the sale and the purchaser was not informed of the MCRA note to the Cornetts, although Mr. Cornett, as president of MCRA, executed a verified statement of the liabilities of MCRA. He did not include the $150,000.00 payable to him and Mrs. Cornett.

On August 30, 1977, the Cornetts, as sellers, and Roth, as buyer, entered into a real estate contract for the sale of the quarter section of farm land. The contract provided the total consideration of $250,000.00 would be paid as follows:

"Thirty-five Thousand Dollars ($35,000.00) deposited with Sellers, the balance to be paid in the following manner: One Hundred Thirty-Five Thousand Dollars

($135,000.00) to be delivered in the form of an installment note to the Sellers, payable in monthly installments of Six Hundred Eight and 33/100 Dollars ($608.33) per month at an interest rate of 5.4074 percent per annum, payable over a period of ten (10) years at said rate the balance of One Hundred Thirty-Five Thousand Dollars ($135,000.00) due at the end of said 10 year period.

"Additionally, a note shall be executed in the amount of Five Thousand Dollars ($5,000.00) payable in ten (10) years from date to the Sellers at a rate of six percent (6%) per annum with no payments on principal or interest to be made until the end of the term of said note in ten (10) years with said principal and interest being paid to the Sellers at that time.

"Additionally, the Buyer has executed to the Sellers a note for the sum of Seventy-Five Thousand Dollars ($75,000.00) to be paid 10 years from August 30, 1978, with no interest accumulating.

"*Additionally, the Sellers shall not secure a mortgage on said property described above in paragraph 2.*" (Emphasis added.)

Upon the failure to receive the $1,000.00 interest payment due on June 1, 1980, the Cornetts filed suit July 17, 1981. In the final amended petition filed January 15, 1982, the Cornetts, in four separate counts, sought actual and punitive damages and reformation of the agreements entered into with Roth. The trial court ruled that counts I and III were barred by the statute of limitations and that counts II and IV were premature and dismissed all counts alleged in the amended petition. Extensive discovery had been completed at the time the trial court ruled on the various pretrial motions which have led to this appeal. The facts involved in the award of attorney fees for filing a frivolous motion and the granting of judgment in favor of Roth in the consolidated case will be considered later in this opinion.

As a preliminary matter to determining the issues on appeal, we are faced with a jurisdictional challenge by the defendants, who have filed a motion to dismiss the appeal. The journal entry of final judgment in the district court was filed October 5, 1982, and plaintiffs' notice of appeal was filed November 2, 1982. On October 15, 1982, plaintiffs had filed a motion for reconsideration of the order of October 5, 1982. This motion was overruled on November 10, 1982, and defendants contend that the notice of appeal had to be filed subsequent to that date. No additional notice of appeal was filed. Defendants have shown no prejudice resulting from the alleged premature filing of the notice of appeal. Considering the liberal construction to be given our procedural statutes and rules and the intent of our code of civil procedure and our appellate rules, we find no fatal jurisdictional

defects and will proceed to determine the appeal on the merits. See K.S.A. 60-102; Supreme Court Rule 203 (230 Kan. xcix).

Count I of the amended petition sought actual and punitive damages against Clifford R. Roth. It was asserted that "Roth has acted as the attorney for the Plaintiffs and/or as a financial adviser for the Plaintiffs or acted in some fiduciary capacity in relationship to the Plaintiffs." It is contended that Roth breached his contract of employment with the Cornetts, breached his fiduciary duty to the Cornetts and was negligent in the drafting of the agreements in failing to provide security for the promissory notes and in not giving mortgages on the real estate. It is further contended the terms of the agreements were unreasonable and to the advantage of Roth and to the disadvantage of the Cornetts. The Cornetts further assert that Roth was negligent in his representation of the Cornetts. Roth asserts he never undertook to represent the Cornetts in any capacity, assumed no fiduciary duty to them, and that his sole position was as a purchaser of the various properties. The trial court found that the essence of the complaint was for a breach of fiduciary duty based upon the agreements entered into in 1977 and as such, the cause of action was barred by the two-year statute of limitations, K.S.A. 60-513. The Cornetts contend that they were not aware of the alleged actions of Roth until the interest payments upon one of the notes ceased in May of 1980, and that the statute of limitations did not commence to run until that date based upon K.S.A. 60-513(a)(3). We conclude the trial court was correct in its ruling. It is not for this court to speculate on why the Cornetts would enter into the agreements on what appear to be extremely disadvantageous terms. The contracts are clear and unambiguous and were entered into knowingly by the Cornetts. It is clear from the record that the Cornetts and Roth were involved in business ventures other than the ones involved in this action and that the agreements herein may have been ancillary to other business ventures. In *Denison State Bank v. Madeira*, 230 Kan. 684, 640 P.2d 1235 (1982), we reviewed the rules pertaining to the establishment of and breach of a fiduciary duty. In *Madeira* we held:

"While there is no invariable rule which determines the existence of a fiduciary relationship it is manifest that there must not only be confidence of one in another, but there must also exist a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one an advantage over the other." Syl. ¶ 5.

"A person who is not under any disability or disadvantage may not abandon all caution and responsibility for his own protection and unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary." Syl. ¶ 10.

The only allegation or fact appearing in the record which would tend to give Roth any advantage over the Cornetts was his occupation as an attorney. On the other hand, the Cornetts, as owners and operators of MCRA, obviously had superior knowledge of the potential of MCRA and its ability to pay the $150,000.00 obligation. Assuming that a fiduciary or contractual duty existed, which is not borne out by the existing record, any alleged breach of that duty was clearly ascertainable at the time of the agreements were entered into. Even if there were an oral contract of employment, which was not shown in the record, any action based thereon would also have arisen in 1977 and would be barred by K.S.A. 60-512(1). We have considered all of the various arguments of the Cornetts and find them to be without merit. The trial court was correct in its ruling that the cause of action in count I was barred by the statute of limitations.

In count III the Cornetts alleged that the two agreements were procured by Roth through fraud and/or misrepresentation and that such fraud or misrepresentation was not discovered until on or about June 1, 1980, when the interest payment was not paid. What has been said in relation to count I is equally applicable to count III. The cause of action, if any ever existed, arose in 1977, was clearly ascertainable at that time, and as this action was not commenced until July, 1981, the cause of action was barred by K.S.A. 60-513.

Count II of the amended petition asserted a claim for $10,000.00 against defendant Roth based upon a written guaranty agreement which he executed in connection with the purchase of the MCRA stock and real estate. Under the terms of the agreement between the Cornetts and Roth, MCRA executed a $150,000.00 note to the sellers. As partial security for payment of the note, Roth furnished a guaranty agreement to the Cornetts which provided:

"This letter hereby guarantees payment of $10,000.00 of the Note between Charles E. Cornett and Virginia B. Cornett from Mid-Continent Research Animals, Inc. dated October 2, 1977, in the amount of $150,000.00, payable September 30, 1987.

"If on September 30, 1987, Mid-Continent Research, Inc. fails to pay said $150,000.00, I hereby guarantee payment of $10,000.00 of that sum. In the event of default on September 30, 1987 by Mid-Continent Research, Inc. and if payment shall be made thereafter by them, it is understood that I will be reimbursed for said $10,000.00.
"This guarantee is limited to $10,000.00.
"A copy of said Note is attached hereto."

The Cornetts contend the guaranty is ambiguous and unclear and therefore should be construed to be a guarantee of the payment of both the promissory note and the monthly interest payments called for in the sale agreement. They also contend it is not clear that it is to be effective only upon nonpayment in 1987 and that as MCRA is no longer in business and is without assets to pay its note when it becomes due, the action on the guaranty is proper. The trial court held the cause of action was premature and dismissed it without prejudice. We agree with the trial court. We find nothing ambiguous about the agreement. It is specific in its terms that if MCRA does not pay the note on its due date, September 30, 1987, Roth will pay $10,000.00.

In *Failing Co. v. Cardwell Investment Co.*, 190 Kan. 509, 376 P.2d 892 (1962), Justice (now Chief Justice) Schroeder stated:

"The liability of a guarantor upon an obligation cannot be extended by implication, and he should not be held beyond the precise terms of his contract. (*Kepley v. Carter*, 49 Kan. 72, 30 Pac. 182; and *Bank v. Bradley*, 61 Kan. 615, 60 Pac. 322.) The same rule was stated in *Dry Goods Co. v. Yearout*, 59 Kan. 684, 54 Pac. 1062, in the following language:

'. . . A contract to pay the debt of another should not be expanded beyond the fair import of its terms. A guarantor, like a surety, is a favorite of the law, and he is not held unless an intention to bind himself is clearly manifested; and his liability is never to be extended beyond the precise terms of his obligation. . . .' (pp. 685, 686.)" pp. 515-16.

The court also stated:

"If the language of the contract of guaranty is clear and leaves no doubt as to the parties' intention concerning the measure of the guarantor's liability, the guarantor cannot be held liable in excess of the limitations that the contract language imposes." pp. 516-17.

The numerous arguments in support of the claim on the guaranty agreement have been considered and are found to be without merit. The trial court did not commit error in dismissing count II as being premature.

Count IV asserts a cause of action against the defendant MCRA on the $150,000.00 note, which by its terms does not become due

until September 30, 1987. It is the contention of appellants that as MCRA is defunct without assets, it is obvious that the note will not be paid on the due date and therefore, the action may be pursued prior to the due date based upon the theory of an anticipatory breach of contract and the failure to make the monthly interest payments. As previously pointed out, the principal and interest under the corporate note are not due until September 30, 1987. MCRA was not a party to the Cornett-Roth agreement which called for monthly payments of interest. Appellants rely upon *Equity Investors, Inc. v. Ammest Group, Inc.,* 1 Kan. App. 2d 276, 563 P.2d 531, *rev. denied* 225 Kan. 843 (1977), wherein it is held:

"If it is clear that one party to a contract is going to be unable to perform it, the other party need not wait for the date when performance is due. He is entitled to treat the contract at an end and pursue his remedies." Syl. ¶ 10.

The reliance is misplaced. The rules stated in that case apply to bilateral executory contracts. In *Upham v. Shattuck,* 151 Kan. 966, 101 P.2d 901 (1940), the plaintiff sued upon several promissory notes which on their face were not yet due. The court stated:

"It is readily observed that none of the notes was due when the action was brought. None of them contained a provision accelerating the due date for any reason. The rule is well settled that 'A cause of action on a negotiable instrument does not accrue until the instrument matures, and a suit commenced before that time is premature.' (8 Am. Jur. 535). See, also, 8 C.J. 398, 399; 10 C.J.S. 1160; *National Bank v. Paper Mfg. Co.,* 58 Kan. 207, 48 Pac. 863. Appellant does not argue seriously that this is not the general rule.

"However, appellant contends that since Clyde Shattuck has denied liability on the notes and has conveyed his property, without consideration, to the extent he has rendered himself insolvent, there has been an anticipatory breach of his contract to pay the debt evidenced by the notes, the effect of which is to accelerate the due date of the notes and authorize an action upon them at once. The doctrine sought to be applied is that of an anticipatory breach of contract. This doctrine applies to bilateral executory contracts (13 C.J. 651-655; 17 C.J.S. 973, 977; *Wilson v. National Refining Co.,* 126 Kan. 139, 266 Pac. 941)—those which embody mutual and independent conditions and obligations. 'It does not apply to mere promises to pay money, or other cases of that nature where there are no mutual stipulations.' (12 Am. Jur. 973.)" p. 968.

In *Mabery v. Western Casualty and Surety Co.,* 173 Kan. 586, 250 P.2d 824 (1952), the plaintiff, who had contracted a severe illness while an employee of the defendant, sued for breach of an oral contract wherein it was contended the defendant had prom-

ised to pay Mabery $100.00 per month "as long as he should live or until he was able to return to work." When the defendant ceased making the agreed-upon payments, plaintiff filed suit for a lump sum of $46,332.00, based upon his normal life expectancy. The court followed the earlier holding of *Upham v. Shattuck*, 151 Kan. 966, and in the opinion stated:

"It is clear that the agreement, as pleaded, was an executory bilateral contract. Each party was to do certain things—plaintiff was to forbear bringing a tort action, and defendants were to make the payments. Plaintiff's own allegations affirmatively show that he has fully performed his part of the contract, that is, he permitted his supposed tort action to become barred. There was no obligation remaining for him to perform at the time of the alleged breach by defendants in November, 1950. The contract, although originally an executory bilateral one, thus became in law a simple unilateral promise for the payment of money at specified intervals, and, notwithstanding counsel for both sides have filed extensive briefs covering the field of damages for breach of contract, we confine ourselves to the application of the rule to the precise situation here presented. In 17 C.J.S., Contracts, § 472, p. 973, relating to rights of a promisee to sue for damages on the theory of anticipatory breach of contract, it is said:

'While there exists some contrary opinion, by the weight of authority the doctrine of anticipatory breach is applicable only where the contract contains interdependent obligations, and does not apply when the contract is executory only on behalf of the other party. Hence, it does not govern actions on contracts to pay money at times specified, where one party has completely executed the contract, and it is executory only on the part of the other party.' (p. 977.)

"In Williston on Contracts, Revised Edition (1937), Vol. 5, § 1290, at page 3676 we find the following:

'In a unilateral contract for the performance of several disconnected acts, or for the payment of several sums in instalments, or in a bilateral contract that has either been wholly performed on one side, or in which the promises are independent, a breach as to one or any number less than the whole of the promised acts is generally partial.'

"At § 1328, pp. 3734 and 3735, same volume, the author continues:

'The propriety of not allowing an immediate action for anticipatory repudiation of all unilateral contracts has sometimes been questioned, but if, as has been argued in previous sections, the whole doctrine was founded on a confusion of a right of action with a defense, it seems undesirable to enlarge the boundaries of the doctrine. Moreover, when the only requirement of the contract is the promisor's future performance it more obviously is unjust to hold him liable to action immediately, than where performances are to be rendered by both parties. In the latter case, waiting until the agreed time has its effect on the whole agreed exchange; in the former case, allowing the promisee immediate recovery is nothing but a direct bonus to the promisee beyond what he was promised and a direct penalty to the promisor.'

"In 12 Am. Jur., Contracts, § 394, p. 973, the rule is stated:

'The doctrine of anticipatory breach applies to contracts which embody

mutual and interdependent conditions and obligations. Indeed, it has been said that it applies only to contracts involving interdependent obligations. It does not apply to "mere promises to pay money, or other cases of that nature where there are no mutual stipulations."

'The general rule is that the doctrine of anticipatory breach does not apply to a contract which the complaining party has fully performed. . . .'" 173 Kan. at pp. 590-591.

Appellants argue that the MCRA note and the Cornett-Roth sale agreement should be read together to find that MCRA has breached its obligations. Assuming, arguendo, that such is true, the appellants' action would be limited at this time to the past due interest payments. Neither the agreement or the promissory note contain an acceleration clause. It is clear that count IV was not one to collect past due interest but was to collect the full amount of the note. The trial court did not err in dismissing the cause of action without prejudice as being premature.

One final matter remains in the principal case. During the course of the proceedings, the Cornetts filed a motion essentially identical to earlier motions which had been filed and ruled upon. At the time of the hearing on the later motion, it was overruled and the court assessed a $150.00 attorney fee against the Cornetts, stating:

"[T]he refiling of essentially identical motions previously ruled upon by the Court constitutes spurious and frivolous claims. . . ."

The assessment of attorney fees under K.S.A. 1982 Supp. 60-211 and K.S.A. 1982 Supp. 60-2007(b) lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. We find no such abuse in this case.

We now turn to the consolidated case in which judgment was granted in favor of Roth. In May of 1978, Clarence J. Simmons, as seller, contracted with the Cornetts to sell them a home in the Whispering Hills area of Johnson County. The property was subject to the payment of certain dues and assessments to the Whispering Hills Homes Association. The property was sold on a "Contract for Deed" in which the Cornetts agreed to pay $74,000.00, payable $14,000.00 cash and $500.00 per month including interest at 8% per annum on the unpaid balance until August 1, 1980, with the remaining unpaid balance due in full at that time. The contract provided that the purchasers would pay all taxes and special assessments. On August 1, 1978, the Cornetts assigned the contract for deed to Clifford R. Roth and Jamie

L. Roth. On August 11, 1980, appellants repurchased the property from the Roths and entered into a new agreement with the Roths and took an assignment back of the original contract for deed. In the new documents the Cornetts agreed:

"In consideration whereof, the Assignees [Cornetts] shall assume all obligations under said Assignment of Contract for Deed and the original Contract for Deed."

The principal balance due August 1, 1980, was not paid and certain homes association assessments had not been paid during the time the Roths had the property and were filed as liens against the property. Simmons, the original seller, brought an action to foreclose on the original contract and the Cornetts cross-claimed against Roth for the amount of the unpaid homes association liens. The trial court found that in the final agreement the Cornetts clearly assumed all of the outstanding obligations under the original contract for deed and the assignment thereof, which included the unpaid homes association assessments. We agree and find no error in the entry of judgment in favor of Roth.

The judgment is affirmed.