NOT DESIGNATED FOR PUBLICATION

No. 113,939

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES F. DENNEY III,
*Appellant*,

v.

KATHEY JOYCE CRUMP, a/k/a KATHY JOYCE CRUMP,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed July 22, 2016.
Reversed and remanded with directions.

*Stanley R. McAfee*, of Kansas City, for appellant.

No appearance by appellee.

Before BUSER, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*:  James F. Denney III appeals from the district court's dismissal of his petition alleging that Kathey Joyce Crump breached her fiduciary duties to him. Because we find that the court erred by determining when the statute of limitations commenced rather than leaving the determination for the trier of fact, we reverse and remand the case to the district court for trial.

1

James F. Denney III was married to Kathey Joyce Crump's sister until 2000. Denney inherited $300,000 when his mother passed away in July 2006. On November 20, 2006, Denney opened a checking account at Industrial State Bank in Kansas City, Kansas, in which he deposited the inheritance money.

In February 2007, two checks to Crump were issued from the account: one for $3,000 and one for $21,000. On April 2, 2007, Denney executed a document which stated that any money given to Crump, her husband, or her family should be considered a gift unless otherwise stated in a written agreement. This document was notarized, but Denney later testified that he did not recall signing it.

On July 13, 2007, Denney added Crump's name to the checking account, telling a bank employee that he wanted Crump added to his account because she was the only person he trusted and she helped him out a lot. Denney signed the signature card adding Crump to the account in the presence of Tammi Davidson, a bank customer service representative; however, Denney later testified that he did not remember adding Crump to the account or signing anything.

On March 20, 2008, in a notary's presence, Denney executed a limited power of attorney authorizing Crump to make all financial and banking decisions on his behalf. On July 18, 2009, in a notary's presence, Denney executed a durable power of attorney granting Crump general powers over his affairs including financial and general business decisions. Denney later alleged, however, that due to certain medical conditions, he did not recall executing these documents and he may not have been competent to do so. Denney was an alcoholic and was undergoing rehabilitation during the time at issue in this case and had previously suffered several hematomas. At some point, a change of

address form was executed to send the statements to Crump's residence. As with the other documents, Denney denied executing this form.

According to Denney, after the durable power of attorney was executed, Crump began drawing funds from the account, but she did not use these funds to conduct financial business on Denney's behalf. In November 2008, a check that Denney wrote on the bank account was returned for insufficient funds. In December 2008, Denney closed the bank account and, on March 24, 2009, he revoked Crump's powers of attorney. He never spoke with Crump about the allegedly unauthorized transfers or inquired at the bank about not receiving account statements.

On October 6, 2010, based on these facts, Denney filed a petition in Wyandotte County District Court alleging that Crump breached the fiduciary duties created by holding his power of attorney and that the breach resulted in damages. Specifically, Denney alleged that after reviewing his financial accounts he discovered: (1) numerous counter checks had been written, some signed by Crump and some allegedly signed by him; (2) several transactions contained his signature, which he believed was forged; (3) the mailing address for his financial accounts had been changed so all information would be sent to Crump; and (4) Crump did not conduct any financial transaction on Denney's behalf or for his benefit. Based on these allegations, Denney claimed that Crump breached her fiduciary duties as his attorney-in-fact because she misused and depleted the funds from his bank accounts for her financial benefit. Because Crump violated her fiduciary duties to Denney and caused him financial loss, he requested she be ordered to repay all of the money she took from the bank accounts and his attorney fees. Denney requested a judgment against Crump for damages in excess of $50,000 including attorney fees and court costs.

Crump filed an answer to Denney's petition on October 22, 2010. She admitted that she had made withdrawals from an account she held jointly with Denney but denied

3

making withdrawals from multiple accounts and denied that Denney was not aware of the extent of the withdrawals she was making. Crump denied the rest of Denney's allegations that she improperly withdrew funds from his bank accounts and breached her fiduciary duties.

Crump also raised several affirmative defenses in her answer, including: (1) Denney's petition failed to state a claim upon which relief could be granted; (2) if money was spent by Crump for her personal or private use, it was done with Denney's knowledge, permission, and approval; (3) if money was spent by Crump for her personal or private use, the money was a gift from Denney; (4) Denney's claims were barred by the doctrine of estoppel because he executed documents giving her control over the funds at issue; (5) Denney's claims were barred by the doctrine of laches; and (6) Denney's claims were barred by the statute of limitations. Crump requested that the district court dismiss Denney's petition and order Denney to pay her attorney fees.

Crump filed a motion for summary judgment or partial summary judgment and for costs and attorney fees on May 10, 2011. This was denied by District Judge Constance M. Alvey at a hearing held on September 1, 2011, and the matter was originally set for jury trial on January 30, 2012, but a subsequent continuance moved the trial to April 2, 2012.

Shortly before trial, on March 8, 2012, Crump filed a motion to dismiss and for costs, along with a renewal of the motion for summary judgment. In the motion, Crump argued that Denney had knowledge of any alleged suspicious activity with the account in January 2007, at which time Denney's wife discussed with Denney a $3,000 check Crump had written to Crump Liquor Store. Further, Crump argued that Denney's wife was also aware of two checks on the account bouncing in May and July 2008 and that Denney's wife had spoken with Denney about it in June 2008. Thus, Crump argued that Denney had knowledge of suspicious activity involving the account as early as January

4

2007 and as late as May to July 2008. In order to comply with the statute of limitations for breach of fiduciary duties, Crump argued that Denney needed to file his petition before January 2009. Because his petition was filed on October 2010, Crump argued that the district court must dismiss the case.

On March 20, 2012, Denney filed a response to Crump's motion to dismiss. Denney argued that only a single check bounced in May 2008 and one in July 2008. In between these times, other checks were written from the account and did not bounce and checks written after July 2008 did not bounce either. Denney argues that because he had not authorized Crump to withdraw any funds from the account, he had no reason to know why the checks bounced. Therefore, Denney argued that he did not become aware of any suspicious activity until multiple checks bounced in November 2008. Because of this, Denney argues that he did not become sufficiently aware of the depletion of funds until October or November 2008 and this was when the statute of limitations began running.

Alternatively, Denney argued that when the depletion of funds became sufficiently ascertainable as to trigger the statute of limitations was a disputed issue. Because the issue was disputed Denney argued that it must be decided by the trier of fact and not the district court via a motion to dismiss.

Judge Alvey held a hearing on the motion to dismiss on March 21, 2012. The parties renewed the arguments they made in their filings to the court. Crump also argued that because there was not a factual dispute about what transpired with the account, the question of when the statute of limitations started was not a question of fact for the jury. After hearing the arguments of the parties, the district court denied the motion to dismiss. The court held that the statute of limitations began running at the knowledge of the fact of injury, not knowledge of the extent of the injury occurring. However, the district court found that the question of whether there was a substantial injury and when Denney would

5

have had knowledge of the injury was a question for the jury. On this basis, the district court denied Crump's motion to dismiss.

After the denial of Crump's motion to dismiss, the case was continued numerous times. Judge Alvey held a hearing on September 15, 2014, at which Denney's temporary guardian and conservator appeared and informed the court that because of recent medical complications Denney had suffered, the guardian had questions about Denney's ability to communicate and how responsive he was. As a result, the district court decided to continue the jury trial scheduled for that day. Crump objected to the continuance.

Crump's attorney and the district court had a heated exchange regarding the events that led to the continuance. As a result of this exchange, Crump moved for a change of judge. On November 19, 2014, Judge Alvey recused herself and the case was transferred to Judge Robert P. Burns.

On February 10, 2015, Crump filed a motion requesting that the new district court judge reconsider her motion to dismiss. The district court held a hearing on the motion to reconsider on March 10, 2015. Crump reasserted her arguments as to when the statute of limitations began to run. Denney objected to the request to reconsider. Denney reasserted his arguments regarding when checks began to bounce consistently and it being a disputed issue to be determined by the trier of fact. Crump also reasserted her argument that there was no dispute of fact in this case and the court could decide when the statute of limitations started to run.

The district court ruled that it had the authority to reconsider the motion and was not acting as an appellate court. The district court held that the check Crump wrote to a liquor store in January 2007 did not trigger the statute of limitations. However, the district court held that Denney should have been aware of a substantial injury no later than July 2008 based on the two checks that bounced in May and July 2008. Because

6

Denney failed to file suit within 2 years of July 2008, the district court held that the statute of limitations barred Denney's claim, so it granted Crump's motion to dismiss with prejudice. Denney filed a timely notice of appeal.

ANALYSIS

The first argument that Denney raises on appeal is that the district court erred when it agreed to reconsider Crump's motion to dismiss after the case was transferred to another judge. Specifically, Denney argues that the district court improperly exercised quasi-appellate review over the previous district court judge's ruling because no new evidence was presented in the motion to reconsider and because he was already preparing for trial.

Denney also argues that it was error to reconsider the motion because it was not filed within a reasonable time as required by K.S.A. 2015 Supp. 60-260(c) or because it was not filed within the 1-year timeline for a motion to alter, amend, or set aside a judgment under K.S.A. 2015 Supp. 60-260(b). Crump did not file an appellate brief and does not respond to Denney's argument.

The only case Denney relies on for his position that the district court acted improperly as a quasi-appellate court is *Finley v. Estate of DeGrazio*, 36 Kan. App. 2d 844, 148 P.3d 1284 (2006). However, this Court of Appeals decision was reversed by the Kansas Supreme Court in *Finley v. Estate of DeGrazio*, 285 Kan. 202, 170 P.3d 407 (2007). In fact, the Supreme Court found that the quasi-appellate argument was moot and declined to address it. 285 Kan. at 213. Because the sole case Denney relies on was reversed by our Supreme Court, Denney's argument that the district court improperly acted as a quasi-appellate court is without support.

7

Denney's argument has also been rejected by this court and our Supreme Court. In *Hogue v. Johnson*, 28 Kan. App. 2d 334, 339, 17 P.3d 364 (1999), this court held: "The ability of a trial judge to change a previous ruling is clearly within the judge's discretion. Furthermore, the appointment of a new judge does not alter this discretion." Just as in the present case, the ruling that was changed in *Hogue* was a decision of whether the applicable statute of limitations was tolled. 28 Kan. App. 2d at 338. Our Supreme Court also has held that a prior denial of a motion for summary judgment does not prohibit a later assigned district court judge from rehearing and sustaining the motion. *Cooper v. RE-MAX Wyandotte County Real Estate, Inc.*, 241 Kan. 281, 283, 736 P.2d 900 (1987). Based on this court's ruling in *Hogue* and our Supreme Court's ruling in *Cooper*, the district court did not err when it reconsidered Crump's motion to dismiss.

Denney's arguments that Crump's motion to reconsider should not have been heard because it was not timely filed under K.S.A. 2015 Supp. 60-260(b) or (c) may not be raised on appeal because they were not raised before the district court. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011) (issues not raised before trial court cannot be raised on appeal). While there are three exceptions to this general rule, Denney does not argue that any of the exceptions apply to his case. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008) (providing exceptions to the general rule), *cert. denied* 555 U.S. 778 (2009). An issue not briefed by the appellant is deemed waived and abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Because Denney did not raise his timeliness arguments before the district court and makes no argument why they should be considered for the first time on appeal, they are not properly preserved for appellate review and will not be considered.

Even if this court were to consider this argument, it is meritless. K.S.A. 2015 Supp. 60-260(b) provides grounds for which a party may obtain relief from a final judgment, order, or proceedings. K.S.A. 2015 Supp. 60-260(c) provides timelines for

filing a motion for relief from a final judgment, order, or proceedings under K.S.A. 2015 Supp. 60-260(b). K.S.A. 2015 Supp. 60-254(a) defines judgment as "the final determination of the parties' rights in an action." Denial of a motion to dismiss is not a final determination of the parties' rights because the action is not resolved and the case continues to proceed toward trial. Therefore, reconsidering the denial of Crump's motion to dismiss does not fall under K.S.A. 2015 Supp. 60-260(b) or (c) because it is not a final judgment.

The second argument that Denney raises on appeal is that it was error for the district court to determine when the statute of limitations commenced because the evidence regarding this issue would require the trier of facts to resolve the issue. Denney argues the fact that two district court judges in this case reached different decisions regarding commencement of the statute of limitations shows that the evidence was sufficiently in dispute to require the trier of fact to make the determination.

An action for breach of fiduciary duty is subject to a 2-year statute of limitations under K.S.A. 60-513(a)(2). *Mynatt v. Collis*, 274 Kan. 850, 866, 57 P.3d 513 (2002). The statute of limitations does not accrue until either substantial injury occurs or the injury suffered becomes reasonably ascertainable. K.S.A. 60-513(b). Full knowledge of the extent of the injury is not necessary for the statute of limitations to accrue. *Michaelis v. Farrell*, 48 Kan. App. 2d 624, 630-31, 296 P.3d 439 (2013) (citing *Roe v. Diefendorf*, 236 Kan. 218, 222, 689 P.2d 885 [1984]). All that is necessary for the statute of limitations to accrue is for the plaintiff to have sustained a sufficient reasonably ascertainable injury. 48 Kan. App. 2d at 631.

The central issue here is whether the district court or the trier of fact should decide when Denney's injury became reasonably ascertainable. If the evidence showed that Denney clearly had knowledge of Crump's depletion of the funds, the district court could determine that the depletion was reasonably ascertainable and commenced the statute of

limitations. However, if the evidence of when the depletion of funds became reasonably ascertainable is in dispute, the trier of fact must make the determination of when the depletion was reasonably ascertainable. 48 Kan. App. 2d at 631.

The key to this case is when Denney can reasonably be said to have obtained knowledge that Crump was depleting his funds. Many of the specific factual points in the history of the case are not disputed. Denney and Crump agree that a check was first written to Crump from the account in January 2007. They also agree that Denney wrote a check from the account that bounced in May 2008 and a second check he wrote bounced in July 2008. Finally, Crump and Denney agree that multiple checks bounced in October or November 2008.

The important question left to resolve is the dispute as to which of the agreed-upon events provided Denney with sufficient notice to make the depletion of the funds reasonably ascertainable and to trigger the statute of limitations. As we know, Judge Burns determined as a matter of law that the May and June 2008 checks were the events which made the depletion of funds reasonably ascertainable to Denney, thus commencing the statute of limitations. Denney challenges this finding, arguing that the district court invaded the province of the trier of fact as to when the depletion by Crump was reasonably ascertainable by Denney.

Before determining whether the district court acted properly in granting dismissal of Denney's claim, it is important to understand the nature of a fiduciary relationship underlying a claim of breach of fiduciary duty. Our appellate courts have held:

> "'While there is no invariable rule which determines the existence of a fiduciary relationship it is manifest that there must not only be confidence of one in another, but *there must also exist a certain inequality; dependence; weakness of age, mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one*

*an advantage over the other.'" Olson v. Harshman*, 233 Kan. 1055, 1059, 668 P.2d 147 (1983) (quoting *Cornett v. Roth*, 233 Kan. 936, Syl. ¶ 1, 666 P.2d 1182 [1982]).

This is the standard we apply to the parties in this case.

We begin our analysis of this issue by assuming that Crump had a fiduciary duty to Denney, which is not disputed by the parties and is readily apparent from the facts recited above. We note that several of the factors which are mentioned in *Cornett* and *Olson* as characteristic of the relationship between fiduciary and beneficiary are present in this case. In particular, it is clear that Crump was in a decidedly advantageous position to Denney with respect to his financial affairs. She was on the signature card of his bank account, possessed a durable power of attorney on his financial and business decisions, and had all banking documents sent to her personal address. Because of Denney's long-term alcoholism, requiring recurrent placement in rehabilitation, as well as his overall mental and physical deterioration, his ability to give attention to even rudimentary aspects of his financial affairs appears highly suspect.

The district court, after hearing the arguments of counsel at the hearing on the motion to dismiss, concluded that the bounced checks of May and June 2008 should have alerted Denney to potential misconduct by Crump, thus making his financial injuries reasonably ascertainable and therefore starting the clock on the statute of limitations. We disagree with this conclusion for three reasons.

First and foremost, the clear imbalance in financial sophistication between Denney and Crump meant that Crump possessed a virtual monopoly on Denney's financial dealings. Because of her status as Denney's former sister-in-law, she was in a unique position to be aware of Denney's personal travails. Having been gifted with $24,000 by Denney shortly after his mother died and then given a "hold harmless" document for any gifts of money to herself or her husband, Crump may have concluded that there was to be

11

little or no oversight of her activities. Once she was ultimately given all the tools necessary to access and manage Denney's money, including his $300,000 inheritance from his mother, Crump may have felt that she was on a very long leash, indeed.

Second, by having all bank records sent to her exclusively, Crump was in a unique position to restrict the flow of financial information to Denney. There is no evidence in the record that duplicate copies of any financial documents were being provided to Denney or his family members. Perhaps evidence would show Denney should have been more concerned about Crump's activities at a time earlier than May or June 2008. On the other hand, perhaps the evidence would show that Denney's multiple physical and medical issues were such an impediment to his perceiving events that he could not be expected to understand even the basics of the financial matters he had relegated to Crump. For example, Denney did not recall a number of specific financial documents he had signed, even when those had been officially witnessed and testified to by bank personnel.

Finally, the two bounced checks which the district court found to be the critical tipoffs to financial impropriety by Crump were preceded by, and followed in succession by, other checks which did not bounce. It was not until in November 2008 that Denney became sufficiently concerned to close the account and cancel Crump's authority to act on his behalf. Crump has argued, and the judge has implicitly found, that a person with basic financial acumen would certainly have felt alarm in May or June 2008 about the bounced checks and contacted the bank to inquire about the problem. But we believe it is a much closer question whether Denney, debilitated by severe mental and physical ailments, was capable of registering the same degree of alarm as an ordinary person. This is particularly true since not all of his checks were being rejected by the bank. Reasonable minds can disagree about the meaning of these events, which is ultimately the very essence of a question for the trier of fact.

In short, we are persuaded that it was error for the district court to conclude, as a matter of law, that there could not be a reasonable dispute about when Denney had knowledge of Crump's depletion of funds. We believe this is an issue for the trier of fact.

The third issue Denney raises in his brief is whether the district court abused its discretion by rehearing Crump's motion to dismiss and deciding when the statute of limitations commenced. In light of our ruling on the prior issue, this argument is moot.

Reversed and remanded for trial.