No. 43,268

Pan American Petroleum Corporation, a Corporation, (Plaintiff), *Appellee* v. Cities Service Gas Company, a Corporation, (Defendant), *Appellant*, and Northern Pump Company, a Corporation; John B. Hawley, Jr.; G. A. Kane; G. S. Davidson; Norma D. Davidson; C. M. Underwood; Myra Hofmeister; Harriet Fermaud; John W. Schultz; Rosita Hawley; Milton C. Neuman; John B. Hawley, Jr., Trustee for Terrell Hawley Simonson and Carl Hofmeister, (Intervenors), *Appellees*.

(382 P. 2d 645)

Opinion filed June 8, 1963.

*Charles V. Wheeler,* of Oklahoma City, Oklahoma, argued the cause, and *Conrad C. Mount* and *George E. Peabody,* both of Oklahoma City, Oklahoma, and *Mark H. Adams, Charles E. Jones, Wm. I. Robinson, J. Ashford Manka, Clifford L. Malone, Mark H. Adams, II, John S. Seeber,* and *Philip L. Bowman,* all of Wichita, were with him on the briefs for the appellant.

*George C. Spradling,* of Wichita, argued the cause, and *W. F. Lilleston, Henry V. Gott, George Stallwitz,* and *Ralph M. Hope,* all of Wichita, and *Norton Standeven,* of Oklahoma City, Oklahoma, were with him on the briefs for the appellee.

*Lester L. Morris, Verne M. Laing, Ferd E. Evans, Jr., Ralph R. Brock, Joseph W. Kennedy,* and *C. Robert Bell,* all of Wichita, were on the briefs for the intervenors.

The opinion of the court was delivered by

Hatcher, C.: This appeal stems from an action to determine the price at which natural gas is to be purchased under the terms of a gas purchase contract.

The plaintiff, The Pan American Petroleum Corporation, is a major producer of natural gas from extensive leasehold acreage in the Kansas-Hugoton gas field.

The defendant, Cities Service Gas Company, is a natural gas pipeline company, purchasing natural gas in producing fields and transporting it for sale to its customers. Defendant's customers include distribution companies which resell the gas to ultimate consumers, both domestic and industrial, and large industrial customers who use the gas as fuel or raw material in manufacturing processes. Defendant supplies all of the major markets in Kansas and sells the large bulk of its gas in Kansas and in western Missouri.

On June 23, 1950, plaintiff and defendant entered into the gas purchase contract involved in this controversy. The contract, consisting of some 23 printed pages, will be highly summarized except for the few paragraphs material to the determination of the issues presented.

The Gas Purchase Contract recited that plaintiff was the owner of oil and gas leases covering approximately 600,000 acres in the Kansas-Hugoton Field. It provided that all of the gas produced or to be produced from all of such leases was to be sold by plaintiff to defendant under the terms and conditions of the Gas Purchase Contract. Plaintiff dedicated all of the reserves and all commercial gas wells upon the 600,000 acres to the performance of its obligations under the contract.

The contract contained the following purchase price provisions:

"Buyer shall pay Seller for all gas purchased by it hereunder the price of 8.4 cents per 1,000 cubic feet until June 23, 1961.

"For all natural gas purchased by Buyer from and after June 22, 1961, the price of such gas shall be the fair and reasonable price for each successive five (5) year period thereafter based on and compared with the price for gas then being paid by other purchasers in the field under similar contracts and conditions, but in no event shall the price be less than 12 cents per 1,000 cubic feet.

"It is expressly stipulated that the delivery of gas by Seller under this agreement shall not be interrupted because of delay in the determination of the applicable price and the delivery of gas shall continue at the previous effective price. Upon determination of the new price, the price shall be applied retroactively to gas sold during the period when the price was undetermined."

The contract contained provisions in case of sale or disposal by either party of any of its properties:

"Seller and Buyer mutually covenant and agree that if at any time during the term of this agreement either party shall sell or otherwise dispose of any

of its properties or arrange for the operation thereof which are applicable to or used in the performance of this agreement, such sale, disposition, or arrangement shall only be made to or with a responsible party and shall be made specifically subject to this gas purchase contract; provided, however, that nothing herein contained shall be construed to prevent either party from pledging all or any portion of its property as security under any mortgage, deed of trust, or other similar lien."

The contract concluded:

"This agreement and each of its covenants and obligations shall inure to the benefit of and be binding upon the successors, trustees, and assigns of the parties hereto."

Plaintiff has assigned about twenty-five percent of the acreage to third parties. Each such assignment contained the following or a similar provision:

"This assignment is made subject to all of the terms and the express and implied covenants and conditions of the leases described in Exhibit "A", attached hereto, in so far as said leases cover the land described in said Exhibit "A", which terms, covenants and conditions the Assignee hereby assumes and agrees to perform with respect to said land. Said terms, covenants and conditions, in so far as the said lease acreage is concerned, shall be binding on the Assignee, not only in favor of the lessors and their heirs, successors and assigns, but also in favor of the Assignor and its successors and assigns."

In January, 1961, negotiations were commenced between plaintiff and defendant for the determination of the price applicable to gas delivered after June 23, 1961. Failing to agree upon the applicable price, plaintiff, as the sole party, commenced this action for the determination of such price.

The plaintiff contended that the fair and reasonable price for the gas sold under the contract for the five years, commencing June 23, 1961, should be 19 cents per Mcf at 14.65 p. s. i. a. The defendant contended the price should be 12 cents per Mcf at 16.4 p. s. i. a.

The case was instituted and tried as a declaratory judgment action. The district court concluded that:

"1. A controversy exists between plaintiff and defendant within the purview of the declaratory judgment law and this action was properly brought.

"2. A fair and reasonable price for the gas sold under the contract here involved for five years commencing on June 23, 1961, based on and compared with the price for gas then being paid by other purchasers in the field under similar contracts and conditions, is the sum of 14.5¢ per Mcf at a pressure base of 14.65 psia."

The defendant has appealed.

Although the parties did not raise or discuss the matter in their

original briefs, appellant, in its oral argument before this court, raised the question as to whether the controversy as presented by the pleadings is justiciable under the declaratory judgment act. Supplemental briefs have been filed by both parties discussing the question.

Appellant cites the recent case of *Alliance Mutual Casualty Co. v. Bailey*, 191 Kan. 192, 380 P. 2d 413, in which the court held in the syllabus:

"1. A declaratory judgment action is not an available remedy where the parties are not in accord as to what the contentions are and the legal question to be presented hinges on the determination of disputed questions of fact.

"2. While a declaratory judgment action may be maintained although it involves the determination of a disputed question of fact, it may not be used where a question of fact is the main issue or where the object of the action is to try such fact as a determinative issue."

Although it is to be understood that this court is in no way abandoning or relaxing the rules announced in the above case, we do not believe the rules announced are applicable to the present controversy. The parties are in complete accord as to what the contention is.

The petition alleges:

". . . that there is an actual controversy between Plaintiff and Defendant regarding the price which will become applicable under Exhibit 'A' [gas purchase contract] on June 23, 1961, Plaintiff contending that said price is 19¢ per Mcf at 14.65 psia and Defendant contending that said price is 12¢ per Mcf at 16.4 psia.

. . . . . . . . . . . . .

"That, by reason of the foregoing, an actual controversy exists between Plaintiff and Defendant regarding the meaning of paragraph 2 of Article IX of Exhibit 'A' and also regarding the price per Mcf which will be applicable under Exhibit 'A' during the five-year period commencing June 23, 1961."

The answer alleges certain technical legal defenses, which will be discussed later, and then states:

"Under the terms and conditions, of the contract aforesaid, the price of the gas sold and delivered by plaintiff to defendant for the five (5) years period commencing June 23, 1961, is and shall be 12¢ per 1,000 cubic feet measured as provided for in Article X of said Contract."

The parties would appear to be in complete accord as to the single controversy. Simply stated it is, under the terms of the contract, what is the fair and reasonable price for natural gas "based on and compared with the price for gas then being paid

by other purchasers in the field under similar contracts and conditions"?

Neither is the determination of a disputed question of fact the main issue in the controversy. The main issue would appear to be what contracts were admissible for comparison under the phrase, "paid by other purchasers in the field under similar contracts and conditions."

Numerous contracts were presented to the trial court for its consideration by both parties. There was no dispute as to the factual matters contained in contracts. The two disputes were:

1. Were the contracts which were presented for the trial court's consideration "in the field" and admissible as evidence for comparative purposes? This was a question of law.

2. Were the contracts presented for the trial court's consideration similar and were the conditions similar making them admissible as evidence for comparative purposes? This was a question of law.

Once these questions were determined there was no dispute as to the evidentiary facts—the contents of the contracts including the price for gas.

Incidental, but only incidental, to the main issue was conflicting expert testimony as to the factors which tend to make the contracts and conditions similar. This again went only to the admissibility of the contracts which were to be used as evidence for comparative purposes. The experts were not in disagreement as to the facts, including the price for gas, contained in the contracts presented.

Under the peculiar circumstances in this case, which will be disclosed as we discuss other questions raised by appellant, it is difficult to find ony other adequate remedy available to plaintiff.

One of the purposes of the declaratory judgment act is to determine a controversy between the parties as to the interpretation of the provisions of a contract before the controversy is ripe for an ordinary civil action to obtain a money judgment.

In 26 C. J. S., Declaratory Judgments, § 3, page 52, the following statement is made:

". . . As otherwise expressed, the purpose of a declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation, either as to present or prospective obligations, to secure an adjudication of rights which are uncertain or in dispute, and to liquidate uncertainties and controversies which might result in future litigation.

"It has also been said to be the purpose of such a proceeding to remove uncertainty from legal relations and clarify, quiet, and stabilize them before

irretrievable acts have been undertaken, to enable an issue of questioned status or fact, on which a whole complex of rights may depend, to be expeditiously determined, *and to set at rest unsettled questions which have arisen in the attempts of contracting parties to interpret* their written agreements." (Emphasis ours.)

The appellant contends that the trial court erred in refusing to require that all parties united in interest with plaintiff be made additional parties to the action. The question was raised by motion for additional parties and by demurrer for lack of indispensable parties. The contention is based on the fact that since the contract was entered into the appellee had assigned approximately twenty-five percent of the acreage to other parties.

Perhaps appellee's assignees were proper parties, but they were not indispensable parties such as are anticipated by G. S. 1949, 60-401, which provides:

"Every action must be prosecuted in the name of the real party in interest. . . ."

The gas purchase contract specifically provides that any sale or disposition of any of the properties covered by the contract ". . . shall only be made to or with a responsible party and shall be made specifically subject to this gas purchase; . . ." The assignments appear to have been made subject to all of the terms and express and implied covenants and conditions of the leases described in the gas purchase contract.

The contract further provides:

"Seller hereby warrants title to the gas sold hereunder and the right of Seller to sell the same, and Seller warrants that all such gas is owned by Seller free from all liens and adverse claims, . . . Seller shall at all times have the obligation to make settlements for all royalties due and payments to Seller's mineral and royalty owners and *to make settlements with all other persons having any interest in the gas sold hereunder*, and Seller agrees to indemnify Buyer and save it harmless from all suits, actions, debts, accounts, damages, costs, losses, and expense arising from or out of adverse claims of any and all persons to said gas. . . ." (Emphasis ours.)

The contract clearly contemplates that the Pan American Petroleum Corporation, formerly the Stanolind Oil and Gas Company, is the sole party to be dealt with by the appellant, as buyer, in any controversy arising under the gas purchase contract. It appears that there are approximately 125 persons residing in various states having some interest in the working interest in the oil and gas leases covered by the contract. The contract does not

contemplate that the appellant would have to deal with all of them in arriving at the price of gas under the provisions of its contract with appellee.

The gas purchase contract was made for the benefit of the buyer and the seller and for the benefit of existing and contemplated assignees of various properties and acreages. It would appear that controversies arising under the contract are properly to be determined and settled by the original parties to the contract. Actions may be brought by or against either party to enforce the terms of the contract or construe its provisions. The appellee has the obligation to his assignees to enforce the provisions of the contract to which their assigned interest was subject. If the appellee does not properly perform its obligations, any person having a grievance arising out of the dealings between the appellee and appellant as contracting parties may present such grievances to the seller or the buyer and if not satisfied, seek proper relief in the court.

This was an action *in personam*. Many of the assignees were outside the state and could not be reached for service of process. Appellee could not be required to stand idly by and forego its rights under the contract simply because all of the parties could not be brought into the action.

The appellant relies solely on the case of *Toklan Royalty Corp. v. Panhandle Eastern Pipe Line Co.*, 168 Kan. 259, 212 P. 2d 348, and the second appeal in the case, 172 Kan. 305, 239 P. 2d 927, as authority for its contention. The decisions are not in point. Without going into an extensive discussion of the issues, it may be stated that in the first appeal it appeared that the assignee of a sixty percent interest in certain oil and gas leases covered by a gas purchase contract was attempting to cancel the contract without making his assignors and co-owners a party to the action. This court held that the owners of the thirty percent interest were necessary parties in an action to cancel the contract.

In the second appeal, in considering an amended petition in which the assignors and co-owners were made parties, it was made to appear that the plaintiff had been assigned a sixty percent interest in oil and gas leases covering 3200 acres, which was a part of 6400 acres, all of which was covered by a gas purchase contract which was indivisible. The assignee was attempting to cancel the gas purchase contract covering the entire 6400 acres

without making the owners of the lease on the remaining 3200 acres parties. This court held that the owners of the leases covering the 3200 acres, which were a part of the gas purchase contract, were necessary parties in an action to cancel the contract.

We would have a similar situation in the case now before us if the assignees holding a twenty-five percent interest in the 600,000 acres covered by the gas purchase contract in question were attempting to cancel the gas purchase contract without making their assignor, the holder of a seventy-five percent interest, a party to the action.

The plaintiff is not attempting to have the gas purchase contract canceled, which might result in a detriment to its assignees. It is attempting to have the contract construed and the price of gas fixed under the terms of the contract in order that it and its assignees have a contractual price for gas which could be submitted to the Federal Power Commission for its approval or rejection.

Appellant contends that the trial court erred in refusing its demand for a jury trial. It calls our attention to Section 5 of the Bill of Rights of the Constitution of Kansas, which provides:

"The right of trial by jury shall be inviolate."

and G. S. 1949, 60-2903, which provides:

"*Issues of fact arising in actions for the recovery of money* or of specific real or personal property *shall be tried by a jury,* unless a jury trial is waived or a reference be ordered as hereinafter provided. . . ." (Emphasis ours.)

It should first be noted that the fact that an action is instituted as a declaratory judgment can in no way detract from the right to a jury trial if the right otherwise exists. Although such actions are not always suitable for a declaratory judgment action, if the issues of fact would be triable to a jury as a matter of right in an ordinary civil action, the right cannot be destroyed by the substitution of a declaratory judgment action. The matter is fully annotated in 13 A. L. R. 2d at page 777.

However, we do not believe the issues as framed by the pleadings present a question for a jury trial for two reasons. Basically, the action involves the construction of a contract or contracts. As we have previously stated, once the trial court had construed the provision for determining the reasonable price for gas "based on and compared with the price for gas then being paid by other purchasers in the field under similar contracts and conditions," it

had next to consider what contracts were admissible for comparison. Once the court determined the contracts which were admissible for comparison, there was nothing remaining to be done but to place such contracts beside the contract in controversy and construe them together. The contracts which were admissible for comparison were in effect incorporated into the contract in controversy by reference for the purpose of determining the reasonable price for gas to be purchased.

The construction of a written instrument is a question of law for the court. (*Cattle Loan Co. v. Warren*, 115 Kan. 21, 222 Pac. 138; *Platts v. Thompson*, 126 Kan. 544, 268 Pac. 833.)

Neither is this action for, nor could it be an action for, the recovery of money. The plaintiff could not recover a money judgment in this action. Neither could it have a finding or conclusion made which would form the basis for a money judgment. The most that the plaintiff could accomplish was the determination of the contract price. This price must then be submitted to the Federal Power Commission for its approval or rejection. It is not until the price is so approved that there is any basis for a money judgment. Even then the right exists only as to future purchases. The price approved cannot be made retroactive and form the basis of a money judgment for past sales.

The authority for the above statement will appear as we consider the next contention raised.

Appellant next contends:

". . . that on or about May 23, 1961, plaintiff made application to the Federal Power Commission of the United States of America for a change in the rate applicable to the price for gas purchased and sold under contract exhibit 'A' to plaintiff's petition, to a price of 12¢ per Mcf at 16.4 psia, which price has been selected by plaintiff to be the rate under contract Exhibit 'A' for the period extending to June 23, 1966, and any controversy which may have theretofore existed in respect to such rate has become moot."

Although we find little merit in the contention, a rather full presentation will clarify much that has already been said.

At the time the gas purchase contract was executed in 1950, the parties did not anticipate that the Natural Gas Act would be made applicable to the producers of natural gas. This is demonstrated by the language in the contract which provides that the new fair and reasonable price when determined shall be retroactive to June 23, 1961, but during the interim and until its de-

termination the delivery of gas shall continue at the "previous effective price." Under the Natural Gas Act the provision providing any new price shall be retroactive is void and unenforceable.

In *Phillips Petroleum Co. v. Wisconsin*, 347 U. S. 672, 98 L. Ed. 1035 S. Ct. 794 (1954), the Supreme Court stated:

"Regulation of the sales in interstate commerce for resale made by a so-called independent natural-gas producer is not essentially different from regulation of such sales when made by an affiliate of an interstate pipeline company. In both cases, the rates charged may have a direct and substantial effect on the price paid by the ultimate consumers. Protection of consumers against exploitation at the hands of natural-gas companies was the primary aim of the Natural Gas Act. . . ." (p. 685.)

In *United Gas Co. v. Mobil Gas Corp.*, 350 U. S. 332, 100 L. Ed. 373, 76 S. Ct. 373, the court ruled that a regulated natural gas company furnishing gas to a distributing company under a long term contract, which was filed with the Federal Power Commission, may not change the price specified in the contract by simply filing a new rate without the consent of the distributing company. The price cannot be changed until it is filed and it cannot be filed until agreed upon by the parties. The court stated:

"The limitations imposed on natural gas companies are set out in §§ 4 (c) and 4 (d). The basic duties are the filing requirements: § 4 (c) requires schedules showing all rates and contracts in force to be filed with the Commission and § 4 (d) requires all changes in such schedules likewise to be filed. In addition, § 4 (d) imposes the further requirement that the changes be filed at least *thirty* days before they are to go into effect. It may readily be seen that these requirements are no more than are necessary to implement §§ 4 (e) and 5 (a): the filing requirements are obviously necessary to permit the Commission to exercise its review functions, and the requirement of 30-days' advance notice of changes is essential to afford the Commission a reasonable period in which to determine whether to exercise its suspension powers under § 4 (e)." (p. 341.)

"All of the relevant provisions of the Act can thus be fully explained as simply defining and implementing the powers of the Commission to review rates set initially by natural gas companies, and there is nothing to indicate that they were intended to do more. Admittedly, the Act presumes a capacity in natural gas companies to make rates and contracts and to change them from time to time, but nowhere in the Act is either power defined. The obvious implication is that, except as specifically limited by the Act, the rate-making powers of natural gas companies were to be no different from those they would possess in the absence of the Act: to establish *ex parte*, and change at will, the rates offered to prospective customers; or to fix by contract, and change only by mutual agreement, the rate agreed upon with a particular customer. No more is necessary to give

full meaning to all the provisions of the Act: consistent with this, § 4 (d) means simply that *no* change—neither a unilateral change to an *ex parte* rate nor an agreed-upon change to a contract—can be made by a natural gas company without the proper notice to the Commission. . . ." (p. 343.)

On May 22, 1961, plaintiff filed a Notice of Rate Change with the Federal Power Commission in which it requested the rate under the contract be changed to 12¢ on June 23, 1961, inasmuch as it is the guaranteed minimum specified in the contract. The Notice incorporated the provisions of the contract, recited the pendency of this law suit in Shawnee County, Kansas, and specifically reserved the right to file for any increase in price that might be determined by the Court. On August 4, 1961, the Federal Power Commission entered an order setting aside the former rate and permitting the 12¢ rate to go into effect as of June 24, 1961. The order recognized the pendency of this law suit and specifically permitted the change in rate without prejudice to this litigation. These proceedings before the Federal Power Commission instead of showing a waiver by plaintiff of its right to file for any additional price determined by the Court, preserved that right. The Federal Power Commission thus recognized plaintiff's right to file for any additional price that might be determined by the Court in this case.

The appellee, on finding it impossible to fix the price by negotiations, could do nothing more than file the minimum rate provided by the contract while it sought the determination of the reasonable price by the court.

The appellant last contends that the trial court erred in excluding evidence and in admitting contracts in evidence which were not in the "field," and not under "similar conditions." The appellant states that the receipt of such evidence over defendant's objection, and the court's judgment based thereon, constituted reversible error.

The question is not properly before this court for determination. Appellant has not specified as error the order overruling its motion for new trial.

The improper admission or rejection of evidence constitutes a trial error. It has been held in a long line of decisions that where error in the overruling of a motion for new trial is not specified as error, trial errors which are specified are not subject to appellate review.

In *Shelton v. Simpson,* 184 Kan. 270, 336 P. 2d 159, it is stated:

"This court has held that trial errors including rulings of the trial court on dilatory pleas, orders setting the cause for trial, denial of additional time to plead, the overruling of a motion for judgment on counsel's opening statement, *the admission or exclusion of evidence,* the sufficiency of evidence to support the judgment, erroneous instructions to the jury, misconduct of court or counsel, and general miscellaneous irregularities of procedure and practice for which new trials may be granted on timely motion of a defeated litigant (*Marshall v. Bailey,* 183 Kan. 310, 313, 327 P. 2d 1034). (p. 272.) (Emphasis ours.)

In *Green v. State Highway Commission,* 184 Kan. 525, 337 P. 2d 657, the appellant specified as error the trial court's admission of ". . . certain incompetent evidence, and refused to admit certain competent evidence, which was prejudicial to appellants." The appellant did not specify as error the order overruling its motion for new trial. In the opinion the court stated:

"In deciding this case we are first confronted with the problem that while the landowners perfected their appeal from the order overruling their motion for a new trial, they fail to specify that ruling as error for appellate review. Harsh as the rule may be, this court has repeatedly held that errors relating to matters occurring at the trial for which a new trial is asked, cannot be considered on appeal unless the action of the district court in overruling the motion is specified as error." (p. 526.)

A careful consideration of the record discloses that there were ample contracts presented to the trial court for consideration and comparison and that these contracts met the conditions specified in the gas purchase contract for determinging a reasonable price for the gas to be purchased, and support the findings and conclusions of the trial court.

The judgment is affirmed.

APPROVED BY THE COURT.

ROBB, J., dissenting.