No. 60,636

CHRISTINA ROOD, *et al., Appellants,* v. KANSAS CITY POWER AND LIGHT COMPANY, *Appellee.*

(755 P.2d 502)

Opinion filed April 29, 1988.

*Elizabeth A. Carson,* of Carson & Fields, of Overland Park, argued the cause and was on the brief for appellants.

*Richard T. Merker,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause, and *Mark V. Bodine,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

PRAGER, C.J.: This is a personal injury action in which the plaintiff, Christina Rood, sought to recover damages from the defendant, Kansas City Power and Light Company (KCPL), for injuries suffered when plaintiff was struck by a 35-pound metal spool which fell off the back of a moving KCPL truck trailer. The

spool struck the plaintiff in the rear as she was walking along the adjoining sidewalk.

The case was tried to a jury which awarded plaintiff damages in the total amount of $2,000. In a post-trial proceeding, the trial court assessed attorney fees against plaintiff's counsel as a sanction for continuing to claim punitive damages without a reasonable basis and in bad faith, pursuant to K.S.A. 60-2007. Plaintiff and plaintiff's attorneys appealed and the case was assigned to the Supreme Court.

At the trial, there was no factual dispute as to how the accident occurred. An eyewitness, who testified on behalf of the plaintiff, observed the 35-pound spool fall off the KCPL truck trailer, roll down the street, and strike the plaintiff. The only real dispute in the case was the nature and extent of plaintiff's injuries and the need for certain medical services which were provided her.

Plaintiff appealed the judgment for $2,000, claiming that the trial court erred in its evidentiary rulings. Plaintiff first appeals from the refusal of the trial court to admit into evidence the medical bill of Dr. Luis Alvarez in the amount of $580 for heat and ultrasound treatments performed on plaintiff's buttock. Dr. Alvarez was one of several doctors who examined and treated plaintiff. He did not testify at the trial. At the trial, before the jury, plaintiff called as a witness Dr. Bernard Abrams, a Missouri physician. Dr. Abrams examined the plaintiff following the accident. At that time, her chief complaint was that she had a cyst in her left buttock, jumping of nerves in the left thigh, and headaches. Plaintiff informed Dr. Abrams that her problems occurred after she was struck by the metal spool. In November 1984, plaintiff was examined by Dr. Alvarez for left buttock pain and left thigh pain. A diagnosis of a cyst in the left buttock was made. Physical therapy and ultrasound treatments were provided by Dr. Alvarez which did not prove beneficial and were stopped after about six weeks.

Dr. Abrams described plaintiff's symptoms in great detail. He gave the plaintiff a thorough examination and found a freely moveable cyst in the middle portion of her left buttock. In Dr. Abrams' opinion, absent preaccident complaints about the cyst, it was reasonable to suppose that the cyst was caused by the blow suffered in the accident. He was uncertain as to whether the cyst

had existed prior to the accident, but was certain that a blow or trauma may cause a cyst. He recommended that the cyst be removed by surgery. Dr. Abrams testified that he was familiar with the treatments given plaintiff by Dr. Alvarez, and, in his judgment, plaintiff had been treated in a manner which was standard for her condition by receiving some form of heat, microwave, ultrasound, and diathermy. These treatments are all forms of heat which penetrate the tissues in order to treat a cyst.

In her testimony at the trial, Christina Rood testified that after her injury she first saw Dr. Schechter, and later was examined by Dr. Alvarez, who treated her for six weeks and then discharged her. Plaintiff was handed a copy of Dr. Alvarez's medical bill which contained a number of items unrelated to any injury suffered in the accident. These unrelated items were eliminated from the proffered bill. Plaintiff claimed that she had incurred medical expenses for the treatments by Dr. Alvarez in the amount of $580.

When plaintiff's counsel offered Dr. Alvarez's bill into evidence as Exhibit 9, counsel for the defendant objected on the basis that there was no proper foundation to support the reasonableness or necessity of the medical bill or to link the treatments with the accident. The trial court sustained the objection. Plaintiff then testified that the dates of the medical services listed in Dr. Alvarez's medical bill were correct and that she was treated by Dr. Alvarez during the months of November and December 1984, either two or three times a week. She testified that the treatments gave her temporary relief from the pain.

Plaintiff maintains that the trial court erred in sustaining defendant's objection to the introduction of the medical bill of Dr. Alvarez for want of a proper foundation. Kansas law requires that medical expenses be necessary and reasonable. *Lewark v. Parkinson*, 73 Kan. 553, 85 Pac. 601 (1906). The reasonableness and necessity of medical bills are questions for the jury. *Cansler v. Harrington*, 231 Kan. 66, 643 P.2d 110 (1982). In *Cansler*, the injured plaintiff testified in detail about the doctors she had visited and the treatments she had received. As in this case, there was medical testimony as to the necessity for the treatment. This testimony was held to be sufficient to establish a foundation for the medical bills. Our decision in *Cansler* requires only that the

medical bill be relevant to be admitted, and that any questions about the amount of the bill go to the weight of the evidence and not its sufficiency. Following the admission of the medical bill into evidence, the defendant is, of course, free to challenge the necessity and amount of any medical charges. As in *Cansler*, the plaintiff here testified as to the treatments she received and the benefit therefrom. She testified, without equivocation, that the treatment was for pain in her left buttock, and that her buttock was bruised and sore following the accident. When she sought treatment from Dr. Alvarez, he found a cyst in her left buttock. The cyst was a constant source of pain and was positioned in the same place where the plaintiff had been struck by the spool. There was evidence that such cysts could result from a blow. Plaintiff testified that she saw Dr. Alvarez two or three times a week for six weeks and received temporary benefits. Although Dr. Alvarez did not testify, Dr. Abrams testified that the ultrasound and heat treatments of Dr. Alvarez were standard. We have concluded that there was sufficient foundation to show the relevance of the medical bill and that it was necessary as a result of plaintiff's injury. In our judgment, the refusal of the trial court to admit the medical bill into evidence for want of sufficient foundation was error which prejudiced the rights of the plaintiff. The jury awarded the plaintiff a total of $2,000, and the admission of the Alvarez medical bill could have reasonably increased her jury award by $580.

The second point raised on the appeal is that the trial court erred in refusing to allow plaintiff's counsel to follow a line of questioning initiated by a juror. At the beginning of the trial, Judge McClain advised counsel that he was going to allow the jury to ask questions at the conclusion of each witness's testimony. The procedure to be followed was for the judge to authorize a juror to write out a question and to hand it to the judge. The judge would then permit counsel to object at the bench outside the hearing of the jury. In the course of the trial, questions which are not involved on this appeal were asked by individual jurors. The propriety of questioning by the jury is not an issue raised on this appeal.

During the defendant's case in chief, Gary Gillum, a KCPL employee who was in the truck at the time the spool came off,

identified a photograph marked defendant's Exhibit C as an actual picture of a metal spool. He testified that the spool on the KCPL truck on the day of the accident was identical to that shown in Exhibit C. However, the metal spool shown in defendant's Exhibit C was attached to a crossbar support and secured by four bolts. Pictures of defendant's trailer taken following the accident showed that the spool which injured plaintiff was actually mounted on a T-bar and secured by spot welds, not bolts. The discrepancy was noted by a juror. At the conclusion of Gillum's testimony, a juror asked this question: "Why has the design change from the T-Bar welding arrangement to a crossbar or bolted arrangement been made?" The witness responded, "I really can't tell you. I suppose one is about the same as the other one, but I can't really tell you that. I don't know."

Plaintiff's counsel then sought to ask Gillum if a locking bolt arrangement, in Gillum's opinion, is stronger than a weld. Defendant's counsel objected, and the trial court sustained the objection. At the time there was no evidence in the record to suggest that defendant had changed the method of securing a spool following the accident. Plaintiff contends her counsel could properly have asked the witness which of the two methods of securing the spool was safer and whether both methods were used by KCPL at the time of the accident. Such a question would have been proper to show that, at the time of the accident, KCPL did not use the safest method of securing the metal spool to the trailer. However, a question by plaintiff's counsel tending to show that KCPL had taken remedial measures subsequent to the accident to prove negligence would have been inadmissible under K.S.A. 60-451. In view of the fact the problem was brought about as the result of the defendant's introduction into evidence of the photograph, plaintiff's counsel should have been permitted to ask an appropriate question to determine why KCPL was securing a spool through the use of welds if it could have been better secured through the use of bolts.

In view of the jury verdict in favor of plaintiff, we have concluded that, even if the ruling of the trial court not to permit further questions was erroneous, the plaintiff has not been substantially prejudiced by the ruling. The real issue in the case was the nature and extent of plaintiff's injury and damages, and the

jury by its verdict found that plaintiff's injury was caused entirely by the negligence of the defendant. Thus, on this point, we hold that any error in the trial court's ruling was harmless error which should not justify a reversal of the case.

As to plaintiff's appeal based solely upon the first two points raised, we hold that a reversal for a new trial on all issues is not required in this case. The Kansas Code of Civil Procedure, at K.S.A. 1987 Supp. 60-2101(a) and (b), gives the Kansas appellate courts the jurisdiction to *correct*, modify, vacate, or reverse a judgment of the district court in order to assure that such judgment is just, legal, and free of abuse. The power to "correct" would appear to give an appellate court the power to allow an additur with the consent of the defendant if necessary to correct a judgment.

In *Kremer v. Kremer*, 76 Kan. 134, 90 Pac. 998 (1907), the court stated that, if an error affects the entire case, a new trial should be granted on all issues; but when an error occurs in the trial of an issue not involving the main issue in the case, and the error can be corrected without disturbing the decision of the main issue, it should be done. Later, in *Schlesener v. Mott*, 107 Kan. 41, 190 Pac. 745 (1920), a modification of the judgment was directed where the jury failed to allow the defendant one item of credit.

The factual circumstances in the present case differ somewhat from those in *Kremer* and *Schlesener*, but the actions of the appellate court in those cases suggest that the granting of an additur in certain cases with the consent of the defendant does not offend basic principles of justice and is within the power of the court.

Throughout this country, the rule is well established that an additur may be allowed on the same basis as a remittitur, that is, by allowing the party affected (the defendant in case of additur) to accept a verdict for the added amount in lieu of the hazards of a new trial. See 5 Am. Jur. 2d, Appeal & Error § 946, pp. 373-74. The rule is well established in Kansas that either a trial court or an appellate court may condition a new trial on the plaintiff's acceptance of a remittitur. We see no reason why the same rule should not be applied under the peculiar facts of this case, where a trial court improperly excluded from the consideration of the

jury one medical bill which the jury could reasonably have considered and added to the medical expenses incurred by the plaintiff as a result of her injuries. If the error in the ruling of the trial court can be corrected without requiring the parties to go through the effort and expense of a new trial, this court should modify the judgment subject to the approval of the defendant, and if defendant objects to the additur, a new trial is ordered.

It is the judgment of this court that the district court's judgment in favor of the plaintiff in the amount of $2,000 be modified to increase the award to the sum of $2,580 with the consent of defendant. If the defendant refuses to accept this modification and requests a new trial, the judgment of the trial court is set aside and the case is remanded to the trial court with directions to afford the parties a new trial on the issue of damages only.

The other four points raised on the appeal involve claimed error in the ruling of the trial court imposing sanctions by assessment of attorney fees against plaintiff's attorneys for continuing to pursue a frivolous punitive damages claim without a reasonable basis in fact and in bad faith pursuant to K.S.A. 60-2007. As noted heretofore, plaintiff's attorneys appealed from that order.

The trial court assessed attorney fees against the law firm of Carson & Fields, plaintiff's counsel, for pursuing a frivolous claim of punitive damages. K.S.A. 60-2007(b), (c), and (d) authorize the assessment of attorney fees and provide:

"(b) At the time of assessment of the costs of any action to which this section applies, if the court finds that a party, in a pleading, motion or response thereto, has asserted a claim or defense, including setoffs and counterclaims, or has denied the truth of a factual statement in a pleading or during discovery, without a reasonable basis in fact and not in good faith, the court shall assess against the party as additional costs of the action, and allow to the other parties, reasonable attorney fees and expenses incurred by the other parties as a result of such claim, defense or denial. An attorney may be held individually or jointly and severally liable with a party for such additional costs where the court finds that the attorney knowingly and not in good faith asserted such a claim, defense or denial or, having gained knowledge of its falsity, failed to inform the court promptly that such claim, defense or denial was without reasonable basis in fact.

"(c) The additional costs provided for in this section may be assessed only upon motion filed by the aggrieved party prior to taxation of costs by the clerk of the court under subsection (c) of K.S.A. 60-2002. The party against whom the additional costs are to be assessed shall be given notice of the motion and

afforded an opportunity to be heard. If the additional costs are assessed, the court shall make findings with respect thereto, including the specific facts and reasons on which the findings are based.

"(d) The purpose of this section is not to prevent a party from litigating bona fide claims or defenses, but to protect litigants from harassment and expense in clear cases of abuse."

The Kansas Code of Professional Responsibility, Rule 225, DR 7-102(A) (1987 Kan. Ct. R. Annot. 147), states that, in his representation of a client, a lawyer shall not file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another. A lawyer shall not knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law. DR 7-106(C) (1987 Kan. Ct. R. Annot. 148) provides that, in his professional capacity before a tribunal, a lawyer shall not state or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence.

Kansas statutes and Supreme Court rules give the Kansas courts the authority to impose sanctions including the assessment of attorney fees against a party or his attorney under a variety of circumstances. K.S.A. 1987 Supp. 60-211 declares, in substance, that the signature of an attorney to pleadings, motions, or other papers constitutes a certificate by the attorney that he or she has read the pleadings; that to the best of the attorney's knowledge, information, and belief formed after reasonable inquiry, the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that the pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper required to be signed is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this section, the court, upon motion or upon its

own initiative upon notice and after an opportunity to be heard, shall impose upon the person who signed it or a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including reasonable attorney fees.

K.S.A. 1987 Supp. 60-230(g) (1) and (2) permit a trial court to impose sanctions against an attorney, including attorney fees, for failure to attend a scheduled deposition. K.S.A. 60-237 permits a trial court to impose sanctions for failure of an attorney to allow discovery. K.S.A. 1987 Supp. 60-256(g) recognizes sanctions to be imposed where an affidavit is presented in connection with a motion for summary judgment in bad faith or solely for the purpose of delay. In addition to the statutes just discussed, K.S.A. 60-721(a), 60-905, and 60-910 authorize the sanction of attorney fees under other circumstances where bad faith is shown. K.S.A. 60-2007, which is set forth earlier in this opinion, authorizes sanctions to be assessed against a party or his attorney at the time of the final assessment of costs in a civil case.

There are similar provisions in the Kansas Code of Civil Procedure for Limited Actions. K.S.A. 61-1713 provides that attorney fees may be imposed as a sanction where a party, without good reason, refuses to admit the genuineness of a document or the truth of matters of fact. K.S.A. 1987 Supp. 61-2709(a) permits a trial court to award to the appellee reasonable attorney fees as a part of the costs, where the appellee is successful on appeal in a small claims case. Supreme Court Rule 7.07 (1987 Kan. Ct. R. Annot. 35) provides that if an appellate court finds that an appeal has been taken frivolously, or only for the purpose of harassment or delay, it may assess a reasonable attorney fee against the appellant or his counsel or both.

These various statutes and court rules have been adopted to make it clear that a Kansas attorney has a professional duty to act in accordance with the standards of the legal profession and to encourage either a trial court or an appellate court to impose sanctions for breach of that professional duty in a proper case. We encourage the Kansas trial courts to impose sanctions under these rules to protect the litigants from harassment in clear cases of violation of professional duty.

K.S.A. 60-2007, in paragraphs (c) and (d), places restraints on the Kansas courts in imposing sanctions. Section (c), which is quoted in full above, states that additional costs may be assessed upon motion filed by the aggrieved party, and the party against whom the additional cost is to be assessed is to be afforded an opportunity to be heard. If additional costs are to be assessed, the court is required to make findings with respect thereto, including the specific facts and reasons on which the findings are based. Section (d) makes it clear that the purpose of the statute is not to prevent a party from making bona fide claims or defenses, but to protect litigants from harassment in clear cases of abuse. Canon 7 of the Code of Professional Responsibility (Supreme Court Rule 225 [1987 Kan. Ct. R. Annot. 146]) provides that a lawyer should represent a client zealously within the bounds of law. At times, that professional duty and DR 7-102(A) may come in conflict and make it difficult for a lawyer to know how to proceed. Thus, in determining whether sanctions should be imposed under the statute, each case must be carefully considered on its merits and no universal rule should be applied one way or the other.

Since K.S.A. 60-2007 was adopted effective July 1, 1982, various trial courts have imposed sanctions, some of which have been upheld by the appellate courts and some of which have been reversed. In *Cornett v. Roth,* 233 Kan. 936, 666 P.2d 1182 (1983), it was held that the assessment of attorney fees under 60-211 and 60-2007(b) lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. The assessment of attorney fees for the filing of a frivolous lawsuit was upheld in *Cornett.* In *Betts v. General Motors Corp.,* 236 Kan. 108, 118-19, 689 P.2d 795 (1984), it was held that the district court did not err in denying defendant's motion to tax extraordinary costs and attorney fees under the statute. A sanction of attorney fees was upheld in *North Cent. Kan. Prod. Credit Ass'n v. Hansen,* 240 Kan. 671, 732 P.2d 726 (1987).

The Court of Appeals in *Smith v. Dunn,* 11 Kan. App. 2d 343, 346-49, 720 P.2d 1137 (1986), reversed the district court, holding that it had abused its discretion in assessing attorney fees and expenses pursuant to K.S.A. 60-2007(b), because it erroneously

concluded that plaintiffs' attorney had no reasonable basis in fact to file a claim against the defendants. The court stated in the opinion that the fact that a party's claim is ultimately denied does not in itself indicate that the claim was frivolous. Rather, we must look at whether there was a "reasonable basis in fact" for the claim when it was asserted and whether the claim was asserted in good faith. We agree with the conclusion of the court that two separate requirements must be met before attorney fees and expenses can be assessed pursuant to K.S.A. 60-2007(b): (1) The claim asserted was without reasonable basis in fact, and (2) the claim was not asserted in good faith.

With these principles in mind, we turn to the factual circumstances shown in the record in this case. The plaintiff's action was to recover damages for personal injuries caused when the 35-pound metal spool was dropped from a KCPL truck trailer, rolled down the street, and struck plaintiff. At the time the case was filed, neither plaintiff nor counsel could have known why the spool dropped from the back of the trailer until the facts were developed. Plaintiff's cause of action was based to a great extent on the doctrine of res ipsa loquitur. The attorneys for the plaintiff alleged wanton misconduct and claimed punitive damages in the plaintiff's petition.

The district court in its journal entry found that the plaintiff's attorneys had probable cause to commence the cause for punitive damages, but that, during the course of the litigation, plaintiff's attorneys did not establish any reasonable or probable cause to support the factual allegations for punitive damages, and that the claim for punitive damages was continued without probable cause. The defendant in its answer alleged that plaintiff's claim for punitive damages was frivolous and asked for sanctions under K.S.A. 60-2007. In the pretrial order, plaintiff again requested punitive damages and the defendant again alleged that plaintiff's claim for punitive damages was frivolous and asked for sanctions under K.S.A. 60-2007. Thereafter, prior to trial, defendant filed a motion for attorney fees and costs, which motion was deferred pending trial.

At the trial, counsel for the plaintiff, in the opening statement, did not claim that defendant's employees were guilty of wanton misconduct or that punitive damages were proper in the case.

Plaintiff did not introduce any evidence of wanton misconduct. If plaintiff's counsel in good faith believed that punitive damages were justified in the case, why was that claim not asserted at the trial? Obviously, plaintiff had no substantial evidence to justify an award of punitive damages.

At the hearing on the motion to assess attorney fees, the court found that the plaintiff had continued to assert the claim against KCPL when there was no probable cause for punitive damages. The court then proceeded to assess 20% of the defendant's total attorney fees as sanctions against the plaintiff's attorneys. The defendant's total attorney fees amounted to $7,847.50 and the attorney fees assessed against plaintiff's counsel was in the amount of $1,452. As to the amount of the fee awarded as a sanction, $1,452, we cannot say that the trial court abused its discretion. The claim by defendant of harassment was brought up again and again and the issue was argued and briefed on several occasions. It appears that house counsel for the defendant KCPL took a more active part in the case because liability for punitive damages was not covered by defendant's insurance. Counsel for plaintiff were afforded an opportunity to present evidence and argument on the issue. From all the circumstances set forth in the record, we cannot say that the trial court abused its discretion in its award of attorney fees against plaintiff's counsel. The judgment awarding attorney fees against plaintiff's counsel in the amount of $1,452 is affirmed.

The judgment of the district court is modified in accordance with the views expressed in this opinion. With the consent of defendant, the judgment in favor of the plaintiff is increased from $2,000 to $2,580. If the defendant refuses to accept this additur and requests in lieu thereof a new trial, the district court is directed to afford the parties a new trial on the issue of damages only.

Judgment affirmed as modified.

HERD, J., concurs in the judgment for an additur and dissents as to the imposition of sanctions.

ALLEGRUCCI, J., concurs in the result.

LOCKETT, J., dissenting: I agree with the assessment of attorney fees against plaintiff pursuant to K.S.A. 60-2007. I also agree that

it was error not to admit evidence of plaintiff's medical bills incurred after treatment by Dr. Alvarez. However, I must dissent from that portion of the opinion which holds that an appellate court may increase a jury verdict by additur, on the same basis as a remittitur, even where (1) the plaintiff has not requested an additur and (2) the evidence upon which the additur is based was not considered by the jury.

There is authority from other jurisdictions that additur should not be allowed on the same basis as remittitur. This view is supported by the argument that, in the case of remittitur, the final judgment stands for an amount found by the jury. See *Holcomb v. Bullock*, 353 Mich. 514, 91 N.W. 2d 869 (1958). Here, the majority is increasing the judgment by adding the amount of a medical bill that was not considered by the jury. Some jurisdictions which do allow an additur distinguish between liquidated and unliquidated damages. In those jurisdictions, there is little dispute regarding the power of a trial or an appellate court to increase an inadequate verdict in cases involving liquidated damages, contract cases, cases where both parties have stipulated as to a damage item, cases where damages are fixed by law, or cases where damages may be determined by undisputed mathematical calculation. However, substantial controversy exists regarding such appellate powers in unliquidated damages cases. 5 Am. Jur. 2d, Appeal and Error § 946, p. 373. The reluctance of courts to use the additur power in cases involving unliquidated damages, in particular, tort cases, is grounded in the realization that to do so would be to usurp the power of the jury to determine damage awards.

The majority opinion states, in holding that the trial court committed error in refusing to admit Dr. Alvarez's medical bills, that the bills needed only to be relevant to be admitted and that "any questions about the amount of the bill go to the weight of the evidence and not its sufficiency." This statement implies that Alvarez's bills belong in the category of disputed or unliquidated damages. Testimony during trial indicated that the plaintiff was sent to Dr. Alvarez by her attorneys, that the bill was sent not to her, but to her attorneys' office, and that Dr. Alvarez wrote a report regarding her condition and sent it to her attorneys.

In actions where both parties agree that there was an error in

the award for damages, or where the award is clearly at variance with the evidence produced at trial, the Kansas trial or appellate courts may correct the judgment. In *Kremer v. Kremer*, 76 Kan. 134, 90 Pac. 998 (1907), cited by the majority, the court held that in a divorce case an error in awarding land to a party contrary to the statutory law can be corrected and a new trial avoided if the error does not affect the whole case. In *Schlesener v. Mott*, 107 Kan. 41, 190 Pac. 745 (1920), also cited by the majority, the jury awarded an amount in damages which did not conform to the undisputed evidence. The trial court remitted the judgment and the appellate court affirmed. However, neither *Kremer* nor *Schlesener* nor any other Kansas case, supports the proposition that an appellate court, after the damage award has been decided by the jury, has the power to add a further allowance for an item of damages not submitted to the jury. See *Woodmansee v. Garrett*, 247 Miss. 148, 153 So. 2d 812 (1963).

Without analyzing when it is proper for a court to grant a remittitur, the majority merely states that an additur may be allowed on the same basis as a remittitur. When is a remittitur allowed? Only where the verdict is excessive in relation to the evidence can the appellate courts remit the excess and affirm the judgment upon its being remitted and accepted by the parties. *Mo. Pac. Rly. Co. v. Dwyer*, 36 Kan. 58, 12 Pac. 352 (1886). A remittitur cannot be granted by a court where the excessive verdict is due to passion or prejudice of the jury, inadvertence, or error of law or computation. *Railroad Co. v. Richards*, 58 Kan. 344, 49 Pac. 436 (1897). Therefore, the additur as adopted by the majority cannot be granted if the inadequate verdict is due to passion or prejudice of the jury, inadvertence, or error of law or computation. An additur may only be granted when the admitted evidence clearly shows that the jury's verdict is inadequate.

The majority's new right of an additur creates three problems. First, it overrules all our prior law that where a jury's award is inadequate the party's remedy is a new trial. *Henderson v. Kansas Power & Light Co.*, 188 Kan. 283, 362 P.2d 60 (1961). Second, it is contrary to the statutory requirement of a new trial when the trial judge improperly excludes evidence. K.S.A. 60-259(a). Finally, if additur is allowed on the same basis as remittitur, this plaintiff is not entitled to an additur. Here, the medical

bills were improperly excluded from consideration by the jury; thus, the trial judge erred in law by excluding the evidence. An error of law is not a basis for granting either a remittitur or an additur.

Kansas appellate courts may correct a judgment as to matters of form, clerical errors, or elements of damage stipulated to by both sides and clearly a part of the record. K.S.A. 1987 Supp. 60-2101(a) and (b). There is no statutory authority or prior case law for either the trial court or an appellate court to increase the judgment as to matters of substance that are required to be passed upon by the jury. Prior to this decision, the issue of the admission or exclusion of evidence had to be raised by a motion for a new trial. *Kinney v. Atchison, Topeka & S. F. Rly. Co.*, 193 Kan. 223, 224, 392 P.2d 873 (1964), *Mid-State Homes, Inc. v. Hockenbarger*, 192 Kan. 505, 389 P.2d 760 (1964); *Pan American Petroleum Corporation v. Cities Service Gas Co.*, 191 Kan. 511, 382 P.2d 645 (1963). This applies even where excluded evidence is documentary. *Mid-State Homes, Inc. v. Hockenbarger*, 192 Kan. at 510-11. A party that has not been afforded a reasonable opportunity to present his evidence to a jury because the trial judge has excluded the evidence has a statutory right to a new trial. K.S.A. 60-259(a).

There is no question but that a new trial will result in added effort and expense. However, the majority of this court should not ignore the statutory law, overrule our prior case law, and increase a jury verdict by considering evidence that was excluded from the jury's consideration. The majority's adoption of the additur now allows judges to weigh evidence that was not submitted to the jury and reach a different verdict.