NOT DESIGNATED FOR PUBLICATION

No. 116,816

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ISIDRO MUNOZ,
*Appellant*,

v.

MARIA LUPERCIO,
*Appellee*.

MEMORANDUM OPINION

Appeal from Ford District Court; SIDNEY R. THOMAS, judge. Opinion filed December 8, 2017. Affirmed.

*Peter J. Antosh*, of Garcia & Antosh, LLP, of Dodge City, for appellant.

*Terry J. Malone*, of Williams-Malone, P.A., of Dodge City, for appellee.

Before SCHROEDER, P.J., MCANANY and POWELL, JJ.

PER CURIAM:  In February 2008, Isidro Munoz and Maria Lupercio were involved in a slow-speed two-car accident in which Lupercio's vehicle, traveling about five miles per hour, struck the rear of Munoz' vehicle. Munoz apparently first sought treatment for back complaints in May 2008. Munoz commenced his negligence action against Lupercio for his personal injuries and damages, but that action was dismissed other than on the merits. Munoz refiled the case in April 2012 under the provisions of K.S.A. 60-518. In his petition, Munoz claimed he suffered bodily injury, pain and suffering, medical expenses, and lost wages as a result of Lupercio's negligence.

1

In May 2013, Munoz deposed Dr. Paul Stein. Dr. Stein conducted an examination of Munoz. He did not provide any treatment. He saw Munoz in May 2012, over four years after the accident. In his deposition, Dr. Stein opined:

> "Mr. Munoz was involved in an apparently mild motor vehicle accident in 2008 in which his pickup truck was struck from the rear. The referral letter from the attorney indicates that Mr. Munoz started to notice significant back pain a few weeks after the accident. In giving history today, the claimant reports that he had pain in the back and some in the neck later the day of the accident and that he went to his chiropractor a few days after the accident. The medical records from the chiropractor indicate that the first visit after this accident was on 5/20/08, approximately three months after the incident. I have no documented basis upon which to determine when symptomatology started and, if it started relatively shortly after the accident, why there was no earlier medical attention. Assuming that the pain started the day of the accident and progressed as described by Mr. Munoz today, and assuming that there was no lower back pain prior to the accident, there would be a causal relationship in the form of aggravation of preexisting degenerative change."

At the court's pretrial conference in May 2014, Lupercio admitted that she was negligent in causing the collision but denied the nature and extent of Munoz' claimed injuries and damages and causation.

In September 2014, Lupercio moved in limine to exclude the testimony of Munoz concerning his medical treatment and the medical expenses incurred. Lupercio argued that the evidence lacked foundation absent the testimony of a qualified medical expert. Munoz stated that he intended to introduce his medical bills into evidence in the following manner:

> "a. Plaintiff will first introduce previously designated deposition testimony from his retained medical expert, Dr. Paul Stein, pertaining to an independent medical examination previously performed on the Plaintiff.

2

"b. Next, Plaintiff will testify as to:

      "i. how he felt physically prior to the accident,

      "ii. how he felt physically after the accident,

      "iii. where he went for medical treatment,

      "iv. what he recalls the physicians and medical staff did for him at his treatment sessions,

      "v. whether he has received and reviewed medical bills in that connection, and

      "vi. whether the bills introduced through him appear to him to be accurate."

Munoz acknowledged that he had no additional witnesses who would offer foundation testimony for his medical records or expenses. The district court sustained the motion in limine.

The case ultimately was tried to the court rather than to a jury in August 2016. The parties stipulated that Lupercio was 100% at fault in causing the accident. Munoz testified on his own behalf and introduced the deposition testimony of Dr. Stein.

Munoz testified that he experienced back pain the same day as the accident. He acknowledged that he suffered a back injury eight years prior. He stated that he was no longer receiving treatment or taking medication for his prior back injury, though Dr. Stein noted that Munoz had "some mild residual lower back symptomatology" from this prior injury. Munoz testified about his ongoing back complaints and the medication he was taking since the time of the accident. He testified that he saw Dr. Stein for an evaluation. He testified that the cost to repair his vehicle was $387.32. He did not provide any testimony regarding his lost wage claim.

Munoz proffered that he received medical treatment that was "fully related to this accident," for which he received bills totaling $8,111.98. He proffered that his first treatment for his injuries was in April 2011. The bills themselves were proffered into evidence but, consistent with the order in limine, they were excluded. Munoz informed

3

the court that "he had no other evidence to present on either causation, necessity or reasonableness of the medical services and medical charges alleged to have been caused by defendant's fault."

Munoz' medical bills were not received into evidence. The district court ruled that any damages for medical care and treatment were speculative and based upon conjecture. The district court awarded Munoz $387.32 in property damage for the cost to repair his vehicle.

Munoz appeals. His sole issue on appeal is his claim that the district court erred in rejecting his testimony regarding the treatment he received for his injuries and the medical expenses he incurred. In our review

> "[f]irst, we determine the relevance of the challenged evidence, *i.e.*, whether the evidence is probative and material. The district court's determination that the evidence is probative is reviewed for an abuse of discretion; the court's determination that the evidence is material is subject to de novo review. [Citations omitted.] If the evidence is relevant, we then determine, de novo, which rules of evidence or other legal principles govern the admission of the evidence in question. Appellate review of the district court's application of the pertinent legal rules and principles depends on whether the rule or principle permits the district court to exercise its discretion or whether the rule raises questions of law. Next, we must consider whether the district court abused its discretion in weighing the probative value of the evidence against the potential that the evidence will unfairly and prejudicially surprise a party who has not had reasonable opportunity to anticipate the evidence. [Citation omitted.]" *Evergreen Recycle v. Indiana Lumbermens Mut. Ins. Co.*, 51 Kan. App. 2d 459, 508, 350 P.3d 1091 (2015).

The parties agree that evidence concerning Munoz' medical treatment and expenses is relevant. "Unless prohibited by statute, constitutional provision, or court decision, all relevant evidence is admissible. [Citations omitted.]" *City of Mission Hills v. Sexton*, 284 Kan. 414, 429, 160 P.3d 812 (2007); see K.S.A. 60-407(f). Lupercio agrees

4

that the evidence is material to establishing the extent of Munoz' damages, but she asserts it is not admissible because Munoz failed to establish a proper foundation for its admission.

Foundation testimony refers to "'preliminary questions designed to establish that evidence is admissible.' [Citations omitted.]" *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). Whether there was an adequate evidentiary foundation to admit evidence is a question of fact subject to the district court's discretion. We will not disturb the district court's ruling if substantial competent evidence supports it. See 302 Kan. at 74-75.

A proper, competent foundation must be established before opinion evidence may be presented. See *Roberts v. J.C. Penney Co.*, 263 Kan. 270, 278, 949 P.2d 613 (1997). K.S.A. 60-419 establishes that before any witness is permitted to testify regarding a relevant or material matter, "there must be evidence that he or she has personal knowledge thereof, or experience, training or education if such be required." See *Stafford v. Karmann*, 2 Kan. App. 2d 248, 250, 577 P.2d 836 (1978). "It is axiomatic that a foundation must be laid establishing the competency, materiality and relevancy of all evidence prior to admission." *Cansler v. Harrington*, 231 Kan. 66, 69, 643 P.2d 110 (1982).

Here, Munoz' testimony was insufficient to establish that the medical expenses were necessary and reasonable. See *Rood v. Kansas City Power & Light Co.*, 243 Kan. 14, 16, 755 P.2d 502 (1988), *disapproved of on other grounds by Dixon v. Prothro*, 251 Kan. 767, 775, 840 P.2d 491 (1992). Further, he lacked sufficient experience, training, or education to testify about the necessity and reasonableness of his medical treatment and expenses or to testify as to causation, particularly in a case involving the interplay between current complaints and a prior unrelated injury.

5

The familiar elements of a tort action such as this are duty, breach, causation, and damages. See *Shirley v. Glass*, 297 Kan. 888, 894, 308 P.3d 1 (2013). At issue in this case are the elements of causation and damages. Proximate cause is defined as "the cause that in a natural and continuous sequence, unbroken by any [superseding] cause, both produced the injury and was necessary for the injury. The injury must be the natural and probable consequence of the wrongful act. [Citation omitted.]" *Hale v. Brown*, 287 Kan. 320, 322, 197 P.3d 438 (2008). The existence of a causal connection between the breached duty and the injuries sustained is a question of fact. *Wicina v. Strecker*, 242 Kan. 278, 280-81, 747 P.2d 167 (1987).

"[T]he well-established test for determining whether expert testimony is required is whether the subject matter is too complex to fall within the common knowledge of the jury and is 'beyond the capability of a lay person to decide.' [Citations omitted.]" *Williamson v. Amrani*, 283 Kan. 227, 245, 152 P.3d 60 (2007), *superseded by statute on other grounds as stated in Kelly v. VinZant*, 287 Kan. 509, 520-22, 197 P.3d 803 (2008). Here, whether Munoz' complaints were caused by the collision with Lupercio or his prior injury was "too complex to fit within the common knowledge exception and . . . beyond the capability of a lay person to decide." See *Hare v. Wendler*, 263 Kan. 434, 445, 949 P.2d 1141 (1997). Thus, evidence of a causal connection between Munoz' accident and his postaccident complaints had to come from an expert witness. See *Nunez v. Wilson*, 211 Kan. 443, 447, 507 P.2d 329 (1973) (testimony regarding whether there is a causal connection between accident and resulting injury is not within the competency of a layman and expert testimony may be required).

While Dr. Stein, the only expert to testify, acknowledged that a low-speed impact such as here could potentially cause some of Munoz' symptoms, he effectively was unable to establish a causal link between the accident and Munoz' current complaints. He stated that if Munoz did not have any back pain before the accident (which contradicts Dr. Stein's earlier finding of residual back pain), and "if there is a temporal relationship

6

between the accident and the onset of symptoms, that is, within 24 or 48 hours or thereabouts, then both of those things coming together would suggest that the accident was the cause of the current symptoms." But with respect to the temporal connection between the accident and the onset of symptoms, Dr. Stein concluded that he had "no documented basis upon which to determine when symptomology started and, if it started relatively shortly after the accident, why there was no earlier medical attention." Thus, to find causation would require Dr. Stein to assume the truth of assertions that he found to be contradicted by his examination of Munoz and by Munoz' own medical records.

Munoz failed to present evidence to satisfy the essential causation element of his cause of action. Just as importantly, Dr. Stein did not opine on the reasonableness and necessity of the medical bills Munoz sought to introduce at trial. Without expert testimony on this issue, Munoz was unable to prove that his medical treatments were necessary and that the bills for those treatments were reasonable.

Evidence regarding a plaintiff's medical treatment and records has been admitted through plaintiff's testimony when coupled with medical testimony as to the reasonableness, necessity, and causation of medical treatment and injuries. See *Rood*, 243 Kan. at 16-17 (finding sufficient foundation to show reasonableness and necessity of medical bills when plaintiff testified as to medical treatment received and a physician testified that such treatment was standard for plaintiff's injury); *Cansler*, 231 Kan. at 69 (medical bills properly admitted where plaintiff testified about her bills for medical treatment of injuries resulting from accident and two physicians testified that plaintiff's treatment was needed); *Lewark v. Parkinson*, 73 Kan. 553, 555-56, 85 P. 601 (1906) (damages awarded for reasonable and necessary services). But here, Munoz lacked the predicate expert medical testimony to establish a causal link between his current complaints and Lupercio's negligent conduct, or to establish the reasonableness and necessity of the care and treatment for which Munoz claims pecuniary loss.

7

Munoz relies on the holding in *Francis v. Pennington*, No. 64,022, unpublished opinion filed October 19, 1990. But Munoz failed to attach a copy of the *Francis* opinion to his appellate brief as required by Supreme Court Rule 7.04(g)(2)(C) (2017 Kan. S. Ct. R. 45). Accordingly, we decline to consider the unpublished opinion in *Francis* which has not been provided to us. See *State v. Adams*, No. 106,935, 2013 WL 4046396, at *6 (Kan. App. 2013) (unpublished opinion).

In *Hards v. Renteria*, No. 84,734, unpublished opinion filed September 1, 2000, the court found that the plaintiff was not competent to testify as to the reasonableness and necessity of her medical expenses, and "no medical doctors testified as to the reasonableness and/or necessity of Hards' nonchiropractic treatment and medical expenses." Slip op. at 4. Thus, the district court did not abuse its discretion in striking her testimony. Slip op. at 6.

Munoz' final argument is a public policy argument. He asserts that the cost of procuring the medical testimony to establish foundation prohibits plaintiffs from pursuing small to mid-sized personal injury lawsuits. He provides no support for his position that the cost of a lawsuit is a basis for the courts to change a rule of evidence and waive the requirements of establishing a foundation for the admission of evidence. Further, he would have us ignore legislative enactments and case precedents and substitute a different version of what he believes the law should be. This we will not do.

We find no error in excluding Munoz' medical bills for lack of a proper foundation.

Affirmed.